(59 N. W. Rep. 1058.)

---

## WILLIAM M. VAIL *vs.* TOWN OF AMENIA.

Opinion filed August 13th, 1894.

**Bridges—Defects—Liability of Townships.**

> While the duty to repair and maintain highways and bridges may in this state devolve upon civil townships, and while such townships may, within certain limits, be empowered to raise revenue for such purpose, yet, in the performance of such duty, the township acts as the instrumentality of the state, and, in the absence of any statute fixing liability, the township shares with the state that immunity from liability for the acts or negligence of its officers which the state enjoys.

**Organization on Petition does not Create Liability.**

> The fact that in this state civil townships are organized only on petition of a majority of the resident voters therein does not change the rule of nonliability.

Appeal from District Court, Cass County; *McConnell*, J.

Action by William M. Vail against the town of Amenia to recover damages for personal injuries. From a judgment for defendant, plaintiff appeals.

Affirmed.

*Benton & Amidon*, for appellant.

The township was by express provision of law bound to maintain and repair the bridges upon its public highways and was vested with power to raise money for that purpose. The power to borrow money is as adequate for the purpose as the power to levy taxes. *Hover* v. *Barkhoof*, 44 N. Y. 113.

Towns and counties have been held to be mere political divisions of the state. *Lorillard* v. *Monroe*, 11 N. Y. 392; *West* v.

*Brockport*, 16 N. Y. 161; *People* v. *Town Auditors*, 74 N. Y. 310; *People* v. *Town Auditors*, 75 N. Y. 316; *Rochester* v. *Town of Rush*, 80 N. Y. 302; 1 Thompson Neg. 621, and not liable for negligence or in actions for tort. *Hill* v. *Boston*, 122 Mass. 349; *Hover* v. *Barkhoof*, 44 N. Y. 113; 2 Thompson Neg. 819; *Russell* v. *Devon*, 2 T. R. 667; *Bartlett* v. *Crozier*, 17 Johns. 439; *Riddle* v. *The Proprietors*, 7 Mass. 169; *Mower* v. *Lester*, 9 Mass. 247; and a distinction has been drawn between townships and counties on the one hand, and cities upon the other, in that, private advantages have been conferred upon cities by special charter upon the agreement to perform certain duties. But the leading courts of this country have refused to recognize the distinction. *Hill* v. *Boston*, 122 Mass. 344; *Prey* v. *Mayor*, 32 N. J. L. 394; *Tranter* v. *Sacramento*, 61 Cal. 271; *Detroit* v. *Blackeby*, 21 Mich. 84, holding cities exempt from liability as well as counties and towns.

On the other hand the following states having no statutes expressly imposing the liability, deny the distinction, and hold counties and towns liable the same as cities. *Dean* v. *New Millford*, 5 Watts & S. 545; *Raphs* v. *Monroe*, 68 Pa. 404; *Newlin* v. *Davis*, 77 Pa. 317; *Mahoney* v. *Scholly*, 84 Pa. 136; *Rigony* v. *Schuykill Co.*, 103 Pa. 202; *Hover* v. *Barkhoof*, 44 N. Y. 113; *Calvert Co.* v. *Gibson*, 36 Md. 229; *Anne Arundel Co.* v. *Duckett*, 20 Md. 468; *Hartford* v. *Hamilton Co.*, 60 Md. 340; *House* v. *Commissioners*, 60 Ind. 580; *Knox Co.* v. *Montgomery*, 109 Ind. 69; *Abbett* v. *Johnson Co.*, 114 Ind. 61, 9 N. E. Rep. 590; *Wilson* v. *Jefferson Co.*, 13 Ia. 181; *Huston* v. *Iowa Co.*, 43 Ia. 456; *Yordy* v. *Marshall Co.*, 45 N. W. Rep. 1042. The Supreme Court of North Dakota, has already held cities liable for negligence. *Ludlow* v. *City of Fargo*, 3 N. D. 485, 57 N. W. Rep. 506, and upon the authority of the courts of Massachusetts, New York and Pennsylvania holding that there is no distinction between cities and townships as to the nature of the duties performed or the liability for negligence in their performance, must hold townships subject to the same liabilities as cities.

*Seth Newman*, for respondent.

The duties imposed upon the supervisors of highways are purely statutory and in the performance of such duties none of these officers are under the control or direction of the town. Their duties are in the nature of public or governmental functions imposed for convenience upon the town officers.    These officers are the agents of the town only in the sense, that the powers of the town can only be exercised through them, because the public can only act through its officers, and not in the sense that the town is liable for their neglect.    *Dosdal* v. *County Commissioners,* 14 N. W. Rep. 458, 30 Minn. 96; *Reardon* v. *St. Louis Co.,* 36 Mo. 562; *Hoffman* v. *San Joaquine Co.,* 21 Cal. 527; *Union Tp.* v. *Berryman,* 28 N. E. Rep. 774.    Highway officers under statutes similar to our own, have been held not to be the agents of the town, so as to subject the town to liability for their acts. *Waltham* v. *Kemper,* 55 Ill. 346; *Russell* v. *Steuben,* 57 Ill. 35; *Morey* v. *Town of Newfane,* 8 Barb. 645; *Town* v. *Plank Road Co.,* 22 Barb. 645; *Town* v. *Loucks,* 21 Barb. 578; *Town* v. *Plank Road Co.,* 27 Barb. 543; *Gailor* v. *Herrick,* 42 Barb. 79; *People* v. *Town Auditors,* 75 N. Y. 316.    The corporate authority of towns under our statute is in the electors alone and not in the supervisors. *Kankakee* v. *Kankakee R. R. Co.,* 115 Ill. 88.    The statutes imposes duty of keeping highway in repair upon the town officers designated therein, it imposes no duty upon the town.    *Haynes* v. *City of Lockport,* 50 N. Y. 236.    Townships are not liable except by express statutory enactment specifically imposing the liability. *Hill* v. *Boston,* 23 Am. Rep. 332; *Bartlett* v. *Crozier,* 8 Am. Dec. 428; *Winbigler* v. *Los Angelos,* 45 Cal. 427; *Crowell* v. *Sonoma Co.,* 25 Cal. 313; *Hoffman* v. *San Joaquin Co.,* 21 Cal. 427; *Barnett* v. *Contra Costa Co.,* 67 Cal. 77; *Downing* v. *Mason Co.,* 12 Am. St. Rep. 473; *Browning* v. *Springfield,* 63 Am. Dec. 345; *Wood* v. *Tipton Co.,* 32 Am. Rep. 561; *White* v. *Commissioners,* 47 Am. Rep. 535; *City of Detroit* v. *Blakeby,* 4 Am. Rep. 450; *McCutcheon* v. *Homer,* 38 Am. Rep. 212; *Clark* v. *Lincoln Co.,* 20 Pac. Rep. 276; *Kincaid* v. *Hardin,* 36 Am. Rep. 276; Cooley's Const. Lim. 247;

*Dodsall* v. *County*, 30 Minn. 96; *Union Civil Tp.* v. *Berryman*, 28 N. E. Rep. 774; *Towle* v. *Com. Council*, 3 Peters 403; *Hamilton Co.* v. *Mighels*, 7 Ohio St. 110; *Weet* v. *Trustees*, 16 N. Y. 161; *Askew* v. *Hale Co.*, 54 Ala. 639; *Weighton* v. *Washington*, 1 Black 39; *Hedges* v. *Hamilton*, 6 Ill. 567; *Sherburne* v. *Yuba Co.*, 21 Cal. 113; *Reed* v. *Belfast*, 20 Me. 246; *Bigelow* v. *Randolph*, 14 Gray 541; *Mower* v. *Leicester*, 9 Mass. 247; *Commissioners* v. *Martin*, 4 Mich. 557; *Larkin* v. *Saginaw*, 11 Mich. 88; *Brabham* v. *Hands Co.*, 28 Am. Rep. 382; *Sandford* v. *Franklin Co.*, 6 Mo. App. 39; *Hyde* v. *Town*, 27 Vt. 443; *Makinnon* v. *Pierson*, 25 Eng. Law and Eq. 457; *Governor* v. *Justices*, 19 Ga. 97; *White* v. *County*, 58 Ill. 297; *Eikenberg* v. *Town*, 22 Kan. 556; *Town* v. *Kemper*, 55 Ill. 346; *Russell* v. *Steuben*, 57 Ill. 35; *Reardon* v. *St. Louis Co.*, 36 Mo. 555; *Ball* v. *Winchester*, 32 N. H. 435; *Eastman* v. *Meredith*, 36 N. H. 284; *Sussex* v. *Straden*, 18 N. J. L. 108; *Treadwell* v. *Commissioners*, 11 Ohio St. 183; *Conrad* v. *Ithaca*, 16 N. Y. 158; *Lohn* v. *Henry Co.*, 26 Ia. 264; *Altnow* v. *Town*, 30 Minn. 186; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297.

BARTHOLOMEW, C. J.    William M. Vail, the appellant herein, sued the town of Amenia for damages for personal injuries.    The complaint charges the corporate capacity of the respondent, and alleges the existence of a certain highway within said town, which was laid out, established, and maintained by respondent, and which was a graded and much used highway; alleges the existence of a bridge in said highway as a part thereof, which said bridge was constructed by respondent, and was under its exclusive charge and control; that said bridge was suffered and allowed to become unsafe and dangerous, and that its condition was known to respondent for months prior to the injury to appellant; that appellant was passing along and over said highway with a traction engine, and said bridge, by reason of its dangerous and rotten condition, broke while appellant was so crossing it, and without fault or negligence on his part, and appellant and the engine were thrown into the coulee below, and the injury received upon which the action is based.

A general demurrer to the complaint was sustained, and the appeal involves no other question. The learned counsel for the appellant admit that the decision of this appeal must turn upon the answers to be given to two questions, which are thus stated by counsel: (1) "Was it the legal duty of the township of Amenia to repair bridges in its public highways, and had it power, under the statute, to raise money, by taxation or otherwise, for that purpose?" (2) "There being no statute in this state expressly making civil townships liable in this class of actions, has the plaintiff any right of action against the defendant?"

It is apparent that an affirmative answer cannot be given to the second question unless the first be also answered in the affirmative, but the first may be answered in the affirmative, and the second still receive a negative reply. In the view we take of this case, it will not be expedient for us at this time to discuss the first question. Its answer involves the construction of numerous statutory provisions which are not clear. It will prove more satisfactory to avoid such construction until it becomes necessary to the decision of a case.

It had long been held that at common law, as against *quasi* municipal corporations, such as counties, towns, and school districts, there existed no liability in cases of this character. *Brown* v. *Fairhaven*, 47 Vt. 386; *Reardon* v. *St. Louis Co.*, 36 Mo. 555; *Com.* v. *City of Newburyport*, 103 Mass. 129; *Leoni* v. *Taylor*, 20 Mich. 148; *Hollenbeck* v. *Winnebago Co.*, 95 Ill. 148; *Union Civil Tp.* v. *Berryman*, (Ind. App.) 28 N. E. 774; *Fowle* v. *Common Council*, 3 Pet. 403; *Reed* v. *Belfast*, 20 Me. 246; *Eikenberry* v. *Bazaar Tp.*, 22 Kan. 556; *Treadwell* v. *County Commissioners*, 11 Ohio St. 183; *Garlinghouse* v. *Jacobs*, 29 N. Y. 297; *Templeton* v. *Linn Co.*, 22 Or. 313, 29 Pac. 795; *Clark* v. *Adair Co.*, 79 Mo. 536; *Watkins* v. *County Court*, 30 W. Va. 657, 5 S. E. 654; *Fry* v. *Albemarle Co.*, 86 Va. 195, 9 S. E. 1004; *Granger* v. *Pulaski Co.*, 26 Ark. 37. It is also equally well established that, as against municipal corporations proper, the common law raised an implied obligation which made the municipality liable in this class of cases.

See *Ludlow* v. *City of Fargo*, (3 N. D. 485) 57 N. W. 506, and cases there cited. The difficulty and doubt in which the case is involved arise from the fact that this distinction has not always been recognized, and that courts and text writers in recent years have endeavored to break away from these decisions, on the ground that, the reason for the distinction having ceased, the distinction itself should cease. It has been held in some jurisdictions that there was no implied liability, even against municipal corporations proper, unless the municipality received some express benefit by the terms of its charter, or received some profit or emoluments growing out of the object that was the cause of the injury. *Hill* v. *Boston*, 122 Mass. 344; *Freeholders* v. *Strader*, 18 N. J. Law, 108; *Pray* v. *Mayor, etc.*, 32 N. J. Law, 397; *Winbigler* v. *City of Los Angeles*, 45 Cal. 36; *Young* v. *City Council of Charleston*, 20 S. C. 116. These cases refuse to recognize any distinction upon this point between *quasi* corporations, such as counties and towns, and municipal corporations proper; and, accepting the law as settled, that no liability rests upon *quasi* corporations, they refuse to admit any liability against chartered cities. Texas announced the same doctrine in *City of Navasota* v. *Pearce*, 46 Tex. 527; but in the subsequent case of *City of Galveston* v. *Posnainsky*, 62 Tex. 118, where the whole subject is ably discussed and the authorities collated at much length, that court clearly recognizes and enforces the distinction, and holds the city liable. The Supreme Court of Pennsylvania, following the precedent established in *Dean* v. *New Melford Tp.*, 5 Watts & S. 545, hold townships and counties liable in this class of cases, for the same reasons and under the same circumstances that cities are held liable. The same is true in Maryland, the leading case in that state being *Commissioners* v. *Duckett*, 20 Md. 468; and in Iowa the proposition is sustained by the cases which follow *Wilson* v. *Jefferson Co.*, 13 Iowa, 181; and in Indiana, following *House* v. *Board*, 60 Ind. 580. We do not agree with counsel that the case of *Hover* v. *Barkhoof*, 44 N. Y. 113, commits the court of appeals of New York to this proposition. In that case the

commissioners of highways were held liable; but in the subsequent case of *People* v. *Town Auditors*, 74 N. Y. 310, wherein the principle of *Hover* v. *Barkhoof* is approved, it is distinctly stated that these commissioners of highways "are independent public officers, exercising public powers, and charged with public duties, specially prescribed by law;" and, after specifying their duties and powers, the court adds: "These circumstances do not, however, make highway officers the agents of the town, so as to subject the town to liability for their acts." It must be admitted that the decisions of eminent courts refuse to recognize any distinction between municipal corporations proper and *quasi* municipal corporations touching their liability for the acts of negligence of their respective officers in matters pertaining to streets, highways, and bridges. Among the text books we find the distinction condemned by Jones on Negligence of Muncicipal Corporations (§ 59 *et seq.*) and Thompson on Negligence (p. 619.) Should this court disregard the distinction, respondent's liability would follow, because, speaking of municipal corporations proper, we said in *Ludlow* v. *Fargo*, *supra*, "that the doctrine of implied liability has the support of a decided preponderance of authority, and we think also the better reason." But we deem the distinction too well established to be disregarded by us except by legislative direction. What may have been the original foundation for this proposition is not a matter of great concern now. It may be true, and we think is true, that the case of *Russell* v. *Men of Devon*, 2 Term R. 667, so often cited as the source of the doctrine of nonliability of *quasi* municipal corporations for injuries resulting from defective bridges or highways, never was intended to be authoritative further than that the inhabitants of a certain territory designated as a county, but not incorporated, and having no corporate purse, could not be held liable for such injuries, and that the case is not an authority for nonliability of counties in this country, where counties are incorporated and have a corporate purse. But the distinction was clearly made in *Riddle* v. *Proprietors*, 7 Mass. 169, decided more than 80 years

ago, and has been asserted in the following cases: *Mower* v. *Leicester*, 9 Mass. 247; *Beardsley* v. *Smith*, 16 Conn. 368; *Eastman* v. *Meredith*, 36 N. H. 284; *Ball* v. *Town of Winchester*, 32 N. H. 435; *White* v. *Commissioners*, 90 N. C. 437; *Brabham* v. *Supervisors*, 54 Miss. 363; *Hyde* v. *Town of Jamaica*, 27 Vt. 443; *Town of Waltham* v. *Kemper*, 55 Ill. 346; *Altnow* v. *Town of Sibley*, 30 Minn. 186, 14 N. W. 877; *Dosdall* v. *Olmsted Co.*, 30 Minn. 96, 14 N. W. 458; *Browning* v. *City of Springfield*, 17 Ill. 143; *Clark* v. *Lincoln Co.*, (Wash. T.) 20 Pac. 576; *Barnes* v. *District of Columbia*, 91 U. S. 540. These citations might be extended to great lengths, but most of the cases are cited in the authorities given, and we call attention to the extended and valuable note to *Browning* v. *Springfield*, as reported in 63 Am. Dec. 345.

But, while it is admitted that we have no statute fixing liability in cases of this character upon townships, yet it is urged upon us with much force of logic that the legislature has abolished the distinction of which we have spoken in this state, and that the authorities cited are not applicable here. Judge Dillon says: "And specially have the courts been much perplexed respecting the principle upon which to rest the distinction, so generally taken, by which what is termed a '*quasi* corporation' though possessing full corporate capacity and a corporate purse, is not impliedly liable for misfeasance or neglect of public duty on the part of its officers and agents, while for the same or a similar wrong there is such a liability resting on municipal or chartered corporations." Dill. Mun. Corp. (4th Ed.) § 966. In *Commissioners* v. *Mighels*, 7 Ohio St. 110, the court said, at page 119: "As before remarked, municipal corporations proper are called into existence either at the direct solicitation or by the free consent of the people who compose them. Counties are local subdivisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, or at least

assented to, by the people it embraces, while the latter is super-
imposed by a sovereign and paramount authority." The court
was there speaking of counties, but counties and towns do not in
general differ in the particulars mentioned. The court was also
seeking for a basis upon which to rest the distinction between
*quasi* and chartered municipal corporations. This language of the
learned Supreme Court of Ohio has been frequently quoted with
approval, as cases already cited will show. Judge Dillon also says
(§ 961:) "In considering the subject of the implied liability (by
which we mean a liability where there is no express statute
creating or declaring it) of municipal corporations to civil actions
for misconduct or neglect on their part, or on the part of their
officers, in respect to corporate duties, resulting in injuries to
individuals, it is essential to bear in mind the distinction pointed
out in a former chapter, and to be noticed again hereafter,
between municipal corporations proper, such as towns and cities,
specially chartered or voluntarily organizing under general acts,
and involuntary *quasi* corporations, such as townships, school
districts, and counties (as these several organizations exist in
most of the states.") But we think he uses the terms "voluntary"
and "involuntary" simply as descriptive of the different organiza-
tions, and not as the ground for any difference in liability, because
he immediately adds: "The decisions of the courts in this
country are almost uniform in holding the former class of corpor-
ations to a much more extended liability than the latter, even
where the latter are invested with corporate capacity and with the
power of taxation, but respecting the grounds for this difference
there is a considerable diversity of opinion." But so often have
courts adverted to the difference between voluntary and involun-
tary organizations that learned counsel reach the conclusion that
this circumstance marks the basis for the difference in liability.
In this state, counties and townships are not arbitrarily formed
and set in motion by the state, as in many of the older states.
They are, to a large extent at least, voluntary organizations. It
is true the state designates certain territory as a county; but that

gives no power to exercise any corporate functions whatever. Until the people residing within the designated territory petition the executive for organization, and the executive organizes the county as provided by statute, it has no corporate existence. See § § 510 to 535 and 572, Comp. Laws. So, also, Ch. 112, Laws Dak. T. 1883, provided for the organization and government of civil townships. The provisions of that statute are dispersed in proper connection in the compilation of 1887, and the matter will be more readily understood by referring to the session laws. It is provided generally that a majority of the legal voters residing in any congressional township containing 25 or more voters may petition the board of county commissioners to be organized as a civil township, and thereupon the county commissioners take the proper steps under the statute to create such civil township. There is no other method in this state of organizing civil townships. Since with us townships are voluntary organizations, it follows that, if that fact fixes the liability in this class of cases, then the demurrer was improperly sustained; but, upon full consideration, we are all of opinion that the method of organization never should be decisive of this question. It may with propriety be used as an argument for or against liability when coupled with other and more persuasive circumstances, but it can never be controlling. It is the nature of the entity, and not the method of its creation, that must control. We must look to its purposes, powers, privileges, and duties. These are fixed by the legislature. An examination of the statute will show that these purposes, powers, privileges, and duties are practically identical with those possessed by townships where the organization is superimposed by paramount authority; and, if the creatures are identical, the methods of creation become of but little importance, and furnish no sufficient reason for imposing different responsibilities. True, these responsibilities may be assumed or not in this state, at the will of the voters; but by what logic can it be said that, by voluntarily assuming the responsibilities ordinarily imposed upon similar organizations under similar circumstances, townships in

this state become liable in a class of cases where liability is unknown in other states? Voluntary organization cannot change established principles, and cannot make what would otherwise be a *quasi* corporation a full municipal corporation. The difference between the two inheres in the purposes of their organization, and this difference is well expressed in *Commissioners* v. *Mighels*, *supra*, where it is said: "A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people. A county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization, and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy." In *Beach* v. *Leahy*, 11 Kan. 29, it is said: "They [*quasi* corporations] possess some corporate functions and attributes, but they are primarily political subdivisions, agencies in the administration of civil government, and their corporate functions are granted to enable them more readily to perform their public duties." The care of highways and bridges devolves primarily upon the state. It is a governmental function, but for negligence in its performance the state is not liable, because the government is not liable to the individual unless made so by statutory or constitutional enactment. Upon the organization of the county, it becomes the instrument or agency through which the state performs that duty, and in the performance of that duty it acts simply as an agent, and incurs no liability beyond that of its principal. When the township is organized, it, in turn, becomes the instrumentality of the state for the performance of that function, and in its performance it shares the immunity from liability which the state enjoys. *Barnett* v. *Contra Costa Co.*, 67 Cal. 77, 7 Pac. 177; *Sherbourne* v. *Yuba Co.*,

21 Cal. 113; *Downing* v. *Mason Co.*, (Ky.) 8 S. W. 264; *White* v. *Commissioners, supra; Wood* v. *Tipton Co.*, 32 Am. Rep. 561; *Hyde* v. *Town of Jamaica, supra.* The principles announced in these cases have the support of a decided preponderance of authority. It may readily be conceded that there are cases on the other side. We should hesitate to follow them were they more numerous and more pronounced.

In this new state the townships are but sparsely settled, by an agricultural community, drawn hither by the liberal public land laws of the United States. These citizens are in the midst of the struggle to establish homes for themselves and their children. One judgment against the town in a case of the character and seriousness disclosed in the complaint in this case would involve the town in financial distress from which it could not be extricated for years, and would greatly retard its further settlement and progress. That to deny relief is a hardship upon appellant may be true, but this is a fitting instance where the individual should suffer rather than the public, unless the legislature, with proper safeguards, otherwise provide. In closing we wish to call attention to the dual character of these *quasi* municipal corporations. Their purposes, powers, and duties are not exclusively those of a governmental instrumentality, and such as pertain to the entire state. They possess certain functions strictly corporate in their character. With the liability arising from the exercise of those functions we having nothing to do now. This case holds only that while the duty may rest upon the township to maintain and repair the public highways and the bridges therein, and while the township within certain limits, may be empowered to raise revenue for that purpose, yet in the performance of that duty the township is the instrument of the state, and is not liable for the acts or negligence of its officers. We cite, further, the just published case of *Bailey* v. *Lawrence Co.*, (S. D.) 59 N. W. 219, where many of the points urged upon us are discussed and like conclusions reached.

The judgment of the District Court is affirmed. All concur.