## TOWN OF FARLEY v. TOWN OF BOXVILLE.[1]

January 13, 1911.

Nos. 16,821—(86).

**County commissioners — extension of town boundary.**
> The board of county commissioners has no authority, in the absence of legislative grant of power, to extend the boundaries of a town organized by it beyond the boundary line of the county.

**Same — authority of board.**
> Power to so extend the boundary is not granted by section 3, art. 11, of the state constitution, nor by section 914, G. S. 1894.

**Congressional township in two counties — organization of town.**
> When a congressional township, divided by county lines, is organized by the board of commissioners of one of the counties in which the township is in part situated, the territory beyond the county line does not become a part of the town. As to that territory, the organization is unauthorized and of no effect.

**Apportionment of bonded debt of town.**
> Chapter 273, Laws 1907, and chapter 492, Laws 1909, providing for the proportionate payment of the bonded indebtedness of towns which, after the issuance of the bonds, have been divided and organized into separate towns, have no application to the facts stated in the opinion.

[1]Reported in 129 N. W. 381.

Action in the district court for Marshall county by the town of Farley in Polk county against the town of Boxville in Marshall county to recover defendant's proportionate share of the principal and interest of certain ten-year bonds aggregating $5,000 issued by plaintiff town on June 20, 1883, pursuant to Sp. Laws 1883, p. 277, c. 135, relating to township drainage in Marshall, Polk and other counties. The answer admitted the organization of defendant as a town, but alleged that section 1 of township 154 north of range 48 was incorporated in the city of Warren by Sp. Laws 1891, c. 44, and denied the other allegations. The case was tried before Grindeland, J., who dismissed the action at the close of plaintiff's case, upon the ground plaintiff had failed to establish a cause of action. From an order denying plaintiff's motion for a new trial, it appealed. Affirmed.

*Brown & Eckstrom* and *George S. Grimes,* for appellant.
*Martin O'Brien* and *Julius J. Olson,* for respondent.

BROWN, J.

The facts in this case are as follows: The north boundary line of Polk county, as established by the act of the legislature creating it, extended due east seventy or more miles from the intersection of Turtle river with the Red River of the North; the same being one and one-half miles south of the town line between townships 154 and 155. All territory north of this line to Canada border was embraced within the then county of Pembina. The name of that county was subsequently changed to Kittson. Chapter 59, p. 114, Laws 1878. Polk county as thus established, was organized by chapter 98, p. 220, Laws 1873. The county of Marshall was established and organized by chapter 10, p. 24, Laws 1879, from territory immediately north of Polk and within the boundaries of Kittson county.

The south line of Marshall county extended easterly from the Red river on the line between townships 154 and 155. This was one and one-half miles north of the north line of Polk county, and left a strip of land between the two of one and one-half miles, not within either county. This territory was subsequently included within Marshall county by an act of the legislature. Chapter 81, p. 111,

Laws 1883. In other words, the north line of Polk county as originally established was made the south line of Marshall county.

Prior to this, and when the territory mentioned was not a part of either county, the board of county commissioners of Polk county, upon petition duly presented, organized township 154, range 48, as the town of Farley. As so organized, the town extended beyond the borders of Polk county one and one-half miles, and included the territory mentioned, which was not then a part of the county. The town, however, proceeded with its business as an organized subdivision of Polk county, and has since remained an organized town. Some of the inhabitants thereof resided upon the strip of land not in either county, and others within the legal boundaries of Polk county.

In June, 1883, the town, as so organized, issued its bonds in the sum of $5,000 for the construction of roads and bridges therein. Two months after the issuance of the bonds, the territory between the two counties became, as already stated, a part of Marshall county. In March, 1884, on a petition duly presented for that purpose, the board of county commissioners of Marshall county organized that part of township 154, range 48, lying north of the Polk county line, and before the correction of the county line supposed to be a part of the town of Farley, as the town of Boxville, in Marshall county. Thereafter a part of this territory was detached from that town, and duly incorporated in and made a part of the city of Warren.

The town of Farley, having paid the bonds issued by it in 1883, brought this action against the town of Boxville, under the provisions of chapter 273, p. 368, Laws 1907 (R. L. Supp. 1909, §§ 787–1, 787–2), and chapter 492, p. 614, Laws 1909 (R. L. Supp. 1909, §§ 691–2, 691–3), to recover its proportionate share thereof, as fixed and defined by those statutes. The action was dismissed in the court below, and plaintiff appealed from an order denying a new trial.

It is conceded that defendant is not bound to contribute to the payment of the bonds, unless made liable by either one or both of the statutes referred to; in other words, that defendant's liability, if it exists, is wholly statutory, and unless so imposed no recovery can be had. We therefore turn our attention to the statutes relied upon.

1. Chapter 273, Laws 1907, is entitled "An act relating to the

liability of towns and villages in cases where bonds have been heretofore issued, and the territory comprising the same has thereafter been divided," and provides that whenever, prior to its passage, any town in the state has issued its bonds for any lawful purpose, and the proceeds thereof have been used for the benefit of such town as then constituted, and such town has thereafter been divided into one or more additional towns or villages, and one of said towns or villages has paid the bonds so issued, the amount thereof shall be a valid and subsisting indebtedness against all such towns or villages, to be apportioned among them according to the rule therein prescribed. It is the contention of plaintiff that defendant is liable under this statute. In this we do not concur.

It is well settled that statutes creating obligations, where otherwise none exist, or those imposing new duties, should, if valid at all, be strictly construed, and treated as embracing such matters and situations only as come clearly within the scope and purpose of the legislation. 2 Sutherland, St. Const. (2d Ed.) 547–580; Peet v. City of East Grand Forks, 101 Minn. 523, 112 N. W. 1005.

The act of 1907 clearly does not cover a situation like that here presented. The act was intended to embrace within its scope legally organized towns and villages, whose territory was thereafter, in the organization of other towns or villages, divided and separated. There never was such a division of the town of Farley in the case at bar. The territory now forming the town of Boxville, though a part of the congressional township organized as Farley, never in legal contemplation became a part of that town. It was without the boundaries of Polk county, and the board of commissioners had no authority to incorporate or include it as a part of the town of Farley.

The state is divided into counties, the jurisdiction of which, in all matters committed to them by the legislature, is limited to the boundaries of each. No county can, in the absence of legislative grant of power, reach out its hand and assert authority over territory not within its boundaries, either in the organization of towns, school districts, or otherwise. This would seem too self-evident to require discussion or the citation of authority.

Counsel does not contend to the contrary; but he does insist that

authority to include in the organization of a town territory beyond the boundaries of a county is conferred by the constitution and laws of the state. In support of this contention attention is called to section 3 of article 11, of the constitution of the state, and to section 914, G. S. 1894. The provisions of the constitution authorize the passage of laws for the organization of towns from congressional or fractional townships, and "when a township is divided by county lines, or does not contain one hundred inhabitants, it may be attached to one or more townships." If this may be said to authorize an extension of a town line beyond the limits of the county, it is a mere grant of power to the legislature, and is not self-executing. And, conceding such to be the effect, it is clear that the power granted has never been acted upon, or provision made for so extending town lines.

Section 914, G. S. 1894, does not so provide. That statute is a general grant of power to boards of county commissioners to organize towns and to fix and determine their boundaries. Only a forced and arbitrary construction of the statute would sanction an extension of the boundaries of towns organized beyond the limits of the county. The existence of a single town, partly in two separate counties, would involve the administration of public affairs therein in inextricable confusion, particularly in the matter of the levy and collection of taxes, and the holding of elections for state and county officers. This is so apparent and obvious that legislation authorizing such a town formation would necessarily provide fully for all such difficulties. None are provided for, and we are clear that no such organization was contemplated by the statute referred to.

Chapter 176, p. 294, Laws 1889, passed long after the conceded separation of the Boxville territory, has no application. If it can be said to have any application whatever, its force and effect would be the reunion of the territory, and this manifestly was not the intention. Our conclusion, therefore, upon this branch of the case, is that the Boxville territory was never a legal part of the town of Farley, and the act of 1907 does not apply. The question whether that territory was de facto a part of Farley is unimportant. The act of 1907 has reference to legally organized towns subsequently divided

into other towns, and not to towns whose territorial limits had been extended beyond those authorized by law.

2. Chapter 492, p. 614, Laws 1909, comes nearer meeting a situation like that at bar, but in view of the rule of strict construction applicable to statutes of this character, we are of the opinion that it does not apply. That act provides that whenever any territory has heretofore been incorporated, or attempted to be incorporated, into a town, and as so incorporated has issued its bonds, and has thereafter been divided, or a part of the territory separated therefrom, by reason of the improper or unauthorized extension of the boundaries thereof into an adjoining county, the detached territory, if subsequently organized into a town, shall be liable for its proportionate share of the indebtedness represented by the bonds so issued by the original town. This imposes liability upon the detached territory only when, subsequent to the separation from the parent town, it has become incorporated "and is now exercising the powers, duties and functions of a town." [p. 615.] Only a part of the detached territory in the case at bar was included within an organized town at the time of the passage of the statute; the remainder thereof being within and a part of the city of Warren. This part, it is claimed, constitutes one-third in value of the taxable property in the whole territory when the bonds in question were issued. In view of this situation we are not justified in holding that the legislature intended to impose upon a part of the detached territory in cases of this kind the entire proportionate share of the indebtedness chargeable to the whole territory; and if the legislature be authorized to create a liability upon a claim so aged and apparently infirm as the one here involved, it should be declared in clear and explicit language.

The indebtedness was incurred in 1883, over twenty-five years ago, and whatever part thereof was expended while the Boxville territory was supposed to constitute a part of Farley was so expended within a period of about six weeks or two months; for at that time the correction of the county line completely separated the territory, and it was then no longer treated as a part of the town of Farley. We find it exceedingly difficult to determine the amount thereof. But, in view of the conclusion reached, it is unnecessary to do so.

We hold, without further discussion, that it was not the intention of the legislature to impose, in cases of this kind, the entire proportionate share of the bonded indebtedness chargeable to detached territory upon a part thereof, and consequently that the act of 1909 has no application to a situation like that here presented. Nor can the court adjust the matter as between the territory within the city of Warren and that comprising the town of Boxville. The liability is statutory, and not one for the cognizance of a court of equity.

Order affirmed.

JAGGARD and SIMPSON, JJ., took no part.