F. E. McCURDY v. A. W. LUCAS, R. C. Battey, C. Bortsch, Jr., R. L. Best, and C. N. Kirk, as the Board of City Commissioners of the City of Bismarck, North Dakota.

(159 N. W. 22.)

**Elections — inspectors — appointment of — state-wide primary — government — commission system — city commissioners — selection by lot — not required to do so.**

1. In appointing inspectors of election for a state-wide primary election, in a city operating under the commission system of government, the city commissioners are not required to select one of their number by lot, the person so chosen to act as inspector in the precinct in which he resides, and appoint the inspectors in the remaining precincts in the city.

**Board of county commissioners — election precinct officers — cities having commission system — no power to appoint.**

2. The board of county commissioners have no authority to appoint inspectors of election in precincts situated within a city operating under the commission system of city government.

Opinion filed August 8, 1916.

Appeal from the District Court of Burleigh County, Hon. *W. L. Nuessle,* J.

Reversed.

*Miller, Zuger, & Tillotson* and *H. R. Berndt,* for appellants.

*F. E. McCurdy,* for respondent.

CHRISTIANSON, J.   The respondent, who is a duly qualified elector and taxpayer of the city of Bismarck, in Burleigh county, North Dakota, and a candidate for nomination to the office of state's attorney of Burleigh county ·on the Republican ticket at the primary election to be held on June 28th, 1916, applied to the district court of Burleigh county for a writ of mandamus compelling the defendants, as members of the board of city commissioners of the city of Bismarck, "to cast lots among themselves and determine by lot which of their number shall act as inspector of election of the precinct in which he resides, and to require the city commissioner on whom the lot falls to appoint inspectors for the remaining precincts of the city of Bismarck."

The trial court directed that the writ issue as prayed for, and the defendants appeal.

The city of Bismarck is incorporated under the provisions of chapter 45 (§§ 3771–3834) of the Political Code, Compiled Laws of North Dakota, 1913, and is being operated under the commission system of city government.   The city is divided into six election precincts, and the defendants constitute its board of city commissioners.

And it appears that on May 18, 1916, the board of county commissioners of Burleigh county appointed election inspectors in the precincts situated within the city of Bismarck, and on June 12, 1916, at a regular session duly and regularly called and held for that purpose, the defendants, as the board of city commissioners of said city of Bismarck by resolution duly adopted by a majority of its members, concurred in the appointments made the board of county commissioners.   The petitioner complains of this method of selection, and asserts:

(1) That the county commissioners had no authority to appoint such inspectors in any event.

(2) That the board of city commissioners as such had no authority to make such appointment, but that under the provisions of § 951, Comp. Laws 1913, it was incumbent upon them to cast lots among them-

selves and in this manner select one of their number, and that the one so chosen should act as inspector in the precinct in which he resides, and should appoint inspectors in the other five precincts in the city.

The statutory provision (Comp. Laws 1913, § 951) relied upon by petitioner reads: "The chairman of the board of supervisors in organized townships shall by virtue of his office be inspector of elections. In case the township contains more than three hundred voters, such chairman shall be inspector of elections in the precinct in which he resides, and shall appoint the inspector in all other precincts which are component parts of the township of which he is chairman. In case the township and any incorporated town or village within its limits contain less than three hundred voters and such township or incorporated town or village have but one voting place, the chairman of the township board of supervisors shall be inspector of elections. In all cities in which the aldermen are elected in different years, the senior alderman shall be inspector of elections for the precinct in which he resides; and in cities in which the aldermen are not so elected, the alderman who shall act as inspector of elections shall be determined by lot in such manner as the city council shall prescribe. In case a ward in any city contains more than three hundred votes, the senior alderman or the alderman chosen by lot shall be inspector of elections for the precinct in which he resides, and shall appoint the inspectors in all other precincts which are component parts of the ward of which he is alderman. In incorporated towns and villages the president of the town or village board of trustees shall act as inspector, and, if the town or village contains more than three hundred voters, he shall act as inspector of the precinct in which he resides, and appoint the inspectors in the other precincts. In case the alderman designated or selected to act as inspector in any ward is disqualified from acting, the other alderman of the ward shall act as inspector, and appoint other inspectors when necessary; and in case the president of the board of trustees of any town or village is disqualified, the remaining members of the board shall select one of their number to act as such inspector, and appoint other inspectors when necessary. The inspector shall, prior to the opening of the polls in his precinct, appoint as judges of election two qualified electors of such precinct who shall have been resident freeholders therein for at least ninety days next preceding such election, and who are

members of different political parties and of the parties which cast the highest number of votes at the preceding general election; provided, that if at least one week prior to such election the chairman of the county central committee of either of the two parties that cast the largest number of votes in the state at the last general election, shall nominate a member of such party as judge, having the qualifications above prescribed, presenting a certificate of such nomination signed by such chairman, he shall be appointed by the inspector, and such judges together with the inspector shall constitute the board of elections. No persons shall be a member of the board of elections who has anything of value bet or wagered on the result of such election, or who is a candidate or is the father, father-in-law, son, son-in-law, brother or brother-in-law of any candidate at such election. If at any time before or during an election it shall be made to appear to any inspector, by the affidavit of two or more qualified electors of the precinct, that either of the judges is disqualified under the provisions of this section, he shall at once remove such judge and fill the place with a qualified person of the same political party as the judge removed, and in case such person so disqualified shall have taken the oath of office as prescribed by law, the inspector shall place such oath and affidavit before the state's attorney of the county; provided, that in case such inspector is disqualified from acting, the other two members of the board of township supervisors and the clerk shall, at least ten days before the date of holding the election, hold a meeting for the purpose of filling such vacancy. Such vacancy shall be filled by appointing an inspector who shall belong to the same political party as the disqualified inspector, and the name of the inspector so appointed shall at once be reported to the county auditor by such clerk."

The petitioner contends that, in view of the fact that under the commission form of government all the commissioners are elected from the city at large, and not from wards, and as there can be and is no senior city commissioner, that the city commissioners should be treated as five aldermen elected from one ward, and as such required to cast lots as provided by § 951, Comp. Laws.

The defendants by their answer assert that § 951, Comp. Laws 1913, is applicable only in cities incorporated under the general incorporation act, i. e., in cities having aldermen; and that its provisions are not ap-

plicable to cities incorporated and operating under the commission form of government. They further assert that conflicting opinions have been rendered by the city attorney, state's attorney, and Attorney General as to the method of the appointment of such election inspectors, and that they are in doubt as to whether they are authorized to make such appointment, but they assert that power to appoint is vested either (1) in the board of county commissioners, or (2) in the board of city commissioners acting as a board, and they further assert that the same persons have been selected as inspectors both by the county commissioners and by the board of city commissioners, and that consequently, in this case, the inspectors have in any event been properly appointed.

It is the function of the courts to interpret, not to make, laws. And "where a statute is incomplete or defective, whether as a result of inadvertance, or because the case in question was not foreseen or contemplated, it is beyond the province of the courts to supply the omissions, even though as a result the statute is a nullity." But it has been held that "where the ordinary interpretation of a statute leads to consequences so dangerous and absurd that they could never have been intended, the court may adopt a construction from analogous provisions, and thus supply an omission." 36 Cyc. 1113. The fundamental purpose of statutory construction is to ascertain and give effect to the intention of the legislature. 36 Cyc. 1106; 26 Am. & Eng. Enc. Law, 602. The intent is the vital part. It is the spirit which gives life to a legislative enactment. Lewis's Sutherland, Stat. Constr. 2d. ed. § 363. If the language is clear and admits of but one meaning, there is no room for construction and it must be assumed that the legislature meant and intended to say what it has thus plainly expressed. 26 Am. & Eng. Enc. Law, 598; 36 Cyc. 1107. But where the language of the statute is of doubtful meaning, or the literal interpretation manifestly fails to express the real legislative intent, the duty devolves upon the court to ascertain the true meaning of the statute. 36 Cyc. 1108; 26 Am. & Eng. Enc. Law, 601. In ascertaining such meaning, "every statute should be construed with reference to the general system of which it forms a part." And "all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. The endeavor should be made by tracing the history of legislation on the subject, to ascertain the uniform

and consistent purpose of the legislature, or to discover how the policy of the legislature . . . has been changed or modified from time to time." 36 Cyc. 1144, 1147. Bearing these well-known principles in mind, we approach the questions presented for our determination in this case.

Plaintiff's contention that a city operating under the commission form of government must be treated as one ward having five aldermen, and that one of such five should be selected by lot to act as inspector in the precinct in which he resides and appoint inspectors in the remaining precincts in such city, is, in our opinion, unsound. We are unable to find anything to indicate that the legislature intended that such election inspectors should be so chosen. Section 951, Comp. Laws 1913, by its terms, is applicable to cities operating under the aldermanic system. It was enacted many years before the commission plan of city government came into existence. Consequently, the legislature could not have had the conditions existing under the commission plan in mind at the time this statute was enacted.

The conditions which make § 951 applicable to, and workable in, cities operating under the aldermanic system do not exist in cities operating under the commission form of government, and the legislature has manifested no intent that it should be so applied to such cities. On the contrary, the legislature has recognized that its provisions are inapplicable to, or at least impractical in, cities operating under the commission plan. Thus in cities operating under the aldermanic system, the provisions of the general election laws' (including § 951, Comp. Laws) are made applicable to city elections. Comp. Laws 1913, § 3670. But in municipal elections, in cities operating under the commission system, the legislature has provided that "for all general and special elections held under the provisions of this act in the city, for city officers and for other purposes, the board of city commissioners shall, at least ten days before any election is held, appoint in each precinct established in the city, one inspector and two judges of election." Comp. Laws 1913, § 3784.

Defendants' contention that there is no provision of law authorizing the city commissioners or any one of them to appoint election inspectors, and that therefore the county commissioners are empowered to do so, is based upon § 696, Compiled Laws 1913, which reads:

"All vacancies, except in the office of a member of the legislative assembly shall be filled by appointment as follows. . . .

"2. In county and precinct offices, by the board of. county commissioners, except vacancies in such board. . . ."

This section, however, must be read in connection with § 683, Comp. Laws (defining vacancies), which reads: .

"Every office shall become vacant on the happening of either of the following events:

"1. Death of the incumbent.

"2. His insanity judicially determined.

"3. His resignation.

"4. His removal from office.

"5. His failure to discharge the duties of his office, when such failure has continued for sixty consecutive days, except when prevented from discharging such duties by sickness or other unavoidable cause.

"6. His failure to qualify as provided by law.

"7. His ceasing to be a resident of the state, district, county or township in which the duties of his office are to be discharged, or for which he may have been elected.

"8. His conviction of a felony or of any offense involving moral turpitude or a violation of his official oath.

"9. His ceasing to possess any of the qualifications of office prescribed by law.

"10. The decision of a competent tribunal declaring void his election or appointment."

It will be observed that a vacancy, as defined by the foregoing section, did not exist in the office of election inspector in the different election precincts in the city of Bismarck.

The only express legislative authority to a board of county commissioners to appoint election inspectors is granted by § 952, Comp. Laws 1913, which provides that the county commissioners shall appoint such inspectors in precincts "consisting of unorganized townships."

The policy and intent of the legislature as manifested and declared by these statutory provisions is that the inspector of election in any election precinct situated within organized townships, villages, or cities, should be either the local official designated by the legislature, or in case such official was disqualified, or the legislative designation

inapplicable, that then the inspector should be appointed by some local officer or officers. We are unable to find anything to indicate that the legislature ever intended that the county commissioners should select election inspectors in election precincts situated within organized townships, villages, or cities.

We are next confronted with defendants' second contention, that the power to appoint such election inspectors is vested in the city commission, and not in any one member thereof selected by lot. It is pointed out that this is in harmony with the general policy and intent of the legislature as manifested by the election laws, as well as by the laws applicable to, and the conditions created in, cities operating under the commission system. There is much in this argument that appeals to us. And while we are by no means satisfied that the legislature has spoken on the subject at all, we are of the opinion that if any intent has been expressed by it, that it is in accord with this latter contention.

The trial court's decision is reversed and the proceeding ordered dismissed.