STATE OF NORTH DAKOTA ON RELATION OF STEVEN-
SON TOWNSHIP, and H. H. Hanson as Clerk of Said Town-
ship, Appellant, v. LEE NICHOLS, County Auditor, Morton
County, North Dakota, Respondent.

(166 N. W. 813.)

**County — division of — general election — vote of — civil township — con-
gressional township — identity presumed.**

When a county is divided by a vote at a general election, and the dividing
line runs through a civil township which is composed of a congressional town-
ship and nineteen sections of land in addition thereto, so that such congressional
township is located in the county which has been newly created and the ad-
ditional nineteen sections in the old county, such additional territory still
maintains its identity as a township in the county to which it formerly be-
longed and in which it now remains, and such original township is not dis-
solved save to the extent of the territory which is taken from it, and which
becomes unorganized territory in the new county.

Opinion filed January 31, 1918.

Mandamus to compel delivery of assessor's books.

Appeal from the District Court of Morton County.

Judgment for defendant. Plaintiff appeals.

Reversed.

*Langer & Nuchols,* for appellant.

The method of organizing civil townships provided by § 1 of chapter
112 of the Session Laws of 1883 has been continued in force to the
present time in exactly the same language. Comp. Laws, 1913, § 4073.

Every township is a body corporate, with rights and powers of local
self-government. Comp. Laws, 1913, § 4083.

The cases all seem to express the rule that the legislature, subject to
constitutional limitation, has the power to create, divide, alter, or dis-
solve township organizations. Bay County v. Bullock, 51 Mich. 544,
16 N. W. 896.

The enlargement of a county does not necessarily extend the bound-
aries of a township lying on the side or boundary of the county to which
the adjacent territory was added on the same side, so as to include in

the township such added territory.    Morris County v. Hinchman, 29 Kan. 90.

*L. H. Connolly,* State's Attorney, for respondent.

A township is a subdivision of a county and cannot exist in more than one county, *i. e.,* one part cannot lie in one county and one part in another county.    Township organization is brought into existence by a majority vote of all the legal voters of the county voting at a general election.    Const. § 170; Abbott's Law Dict.; Comp. Laws, 1913, §§ 670, 4072, 4074, 4161, 4167, 4174, 4237, 4256.

Obligations cannot be shifted or canceled by the division of a county. Plunkett's Creek Twp. v. Crawford, 27 Pa. 107.

A township cannot consistently exist in two counties.    Farley v. Boxville, 113 Minn. 203, 129 N. W. 381.

BRUCE, Ch. J.    This is an appeal from a judgment denying a peremptory writ of mandamus which was sought by the plaintiff and appellant to compel the defendant, as auditor of the county of Morton, to prepare and deliver to the relators the assessment book as provided by law, and the necessary blanks for the assessment by the assessor of Stevenson township, for the purpose of taxation for the year 1917 of the property within that portion of said Stevenson township located within the territorial limits of said county of Morton.

It is a result of the general election of 1916, which divided Morton county by segregating a portion thereof and creating the same into the new county of Grant.

The whole of the Stevenson township was originally in the county of Morton and was composed of congressional township 133 north range 83, 83 west and fractional congressional township 133 north of range 82 west.    After the creation of the new county of Grant this fractional township, containing approximately nineteen sections, was located in Morton county, and the congressional township of thirty-six sections, in the new county of Grant; and the auditor of Morton county, North Dakota, defendant herein, refused to deliver to the assessor of relator township the assessment book and necessary blanks for the assessment of property within that portion of Stevenson township lying in the county of Morton for the purpose of taxation for the year 1917.    This refusal was based upon the advice of the state's attorney of Morton

county, who held that Stevenson township had been dissolved by the segregation of Grant county from Morton county, and that the territory now within Morton county, and which was formerly included in Stevenson township, became unorganized territory of the county of Morton and a part of the assessor's district in said county to which the same was adjacent.

The question which is presented to us for determination is not without difficulty. We are satisfied that in North Dakota a township must always be looked upon as a subdivision of a county. Abbott's Law Dictionary. It is created by the board of county commissioners of the county in which it is located, on a petition of the voters, rather than by the independent act of the voters themselves. See § 4072 of the Compiled Laws of 1913. This being the fact, and since no means have been provided for the dissolution of a township, except by a vote of the majority of the electors residing therein (see §§ 4277 et seq., Compiled Laws of 1913), we are satisfied that it was the intention of the legislature that, once being created, the entity of a township should be preserved and should continue except where it, the legislature, chose to expressly otherwise provide. Our conclusion is that the nineteen sections in Morton county still constitute the township of Stevenson, and that the thirty-six sections in Grant county constitute unorganized territory in such new county.

We are satisfied that the ultimate control in such cases is in the legislature, and that the legislature can authorize the division of townships by the creation of new counties, as it has done in the case at bar. Since, however, § 4079 of the Compiled Laws of 1913 expressly provides that, where a congressional township borders on a lake or river (as does the township in the case at bar), a civil township may be composed of a portion thereof, provided such portion contains more than eighteen sections of land and contains at least one hundred inhabitants, we are satisfied that a division of a county which divides a township and places a portion of its territory in the new county about to be created, does not destroy the entity of that portion of the township which has been left in the old county, nor does it make of it unorganized territory, provided such portion still contains 18 sections and 100 inhabitants. In such a case all that is effected is an alteration of the territorial limits of the original township.

We are satisfied that a township when once created is not merely a corporate entity, but that it is subordinate to and is a part of the general system of county management and control of the county in which it is situated. No man can serve two masters, and it is out of the question that for election purposes a fractional township should be considered a political entity and for taxation purposes it should be considered unorganized territory. See Springwells v. Wayne County, 58 Mich. 240, 25 N. W. 329; Courtright v. Brooks Twp. 54 Mich. 182, 19 N. W. 945; Farley v. Boxville, 113 Minn. 203, 129 N. W. 381.

In both taxation and election matters, the unit is the county, township, or precinct; and there is no provision in the statutes for two precincts in two counties, nor for the election of two assessors in so far as townships are concerned. It is true that in the case of elections which are held in cities and in villages whose territory stretches into two counties, two or more precincts are provided for in each county. No such provision, however, is to be found in the case of townships. See §§ 950, 4271, 4079, 4087, 4146, 4144, 4174, 2125, 4212, 3934–3938, 3564, 3556, 3932–3941. See also § 121 of the Constitution, which limits the right of suffrage .to those who have resided in the state one year, the county six months, and the precinct ninety days.

The judgment of the District Court is reversed and the cause is remanded for further proceedings according to law.

ROBINSON and GRACE, JJ. I concur in the result.

CHRISTIANSON, J. (concurring specially). I concur in the conclusion that the township of Stevenson was not dissolved by operation of law by the creation of a new county out of a portion of its territory. I am not, however, fully convinced of the soundness of the views of my associates, or prepared to concur in their conclusion, that the change of the boundaries of Morton county *ipso facto* changed the boundaries of Stevenson township.

The civil township of Stevenson was duly organized in Morton county in 1910, Stevenson township consisted of a full congressional township and an adjoining fractional township containing approximately nineteen sections of land. The fractional township was caused by the Cannon Ball river, which divided the congressional township

almost diagonally from northeast to southwest, and which river formed the boundary between Morton county and Sioux county. At the general election in November, 1916, Morton county was divided by segregating a portion thereof and creating the same into a new county, to wit, Grant county. The boundary line between the counties of Grant and Morton divided Stevenson township in such manner that the full congressional township is located in Grant county and the fractional township is located in Morton county.

The respondent contended that this change in the county boundaries *ipso facto* dissolved the township of Stevenson. The trial court sustained this contention. The sole question argued by the parties on this appeal was whether Stevenson township became dissolved.

It is conceded that the legislature has, subject to constitutional restriction, full power to create, abolish, consolidate, or divide civil townships. 38 Cyc. 604. And it is elementary that, where the legislature has prescribed that a certain act shall be done in a particular manner, such affirmative declaration contains an implied negative that it shall not be done in any other manner. In this state the legislature has, by general law, prescribed the specific manner in which townships may be organized, divided, or dissolved. §§ 4072–4078, 4079–4081, 4277–4281.

A civil township can be organized only whenever a majority of the legal voters thereof petition the board of county commissioners that the township be organized. Comp. Laws 1913, § 4072. This is the only method provided in this state for organizing civil townships. Even the name of a civil township must be "in accordance with the expressed wish of a majority of the legal voters residing therein." Comp. Laws 1913, § 4074.

"Each township is a body corporate, and has capacity: (1) To sue and be sued; (2) To purchase and hold lands within its limits and for the use of its inhabitants, subject to the powers of the legislative assembly; (3) to make such contracts and purchase and hold such personal property as may be necessary for the exercise of its corporate or administrative powers; (4) to make such orders for the disposition, regulation, or use of its corporate property as may be deemed conducive to the interest of its inhabitants." Comp. Laws, 1913, § 4083.

A fraction of a township may be attached "to an adjoining township

or be divided between two or more townships or organized separately, according to the wishes of a majority of the legal voters to be affected thereby." Comp. Laws, 1913, § 4073. An organized township may be divided by setting apart therefrom and organizing as a separate civil township, a "congressional township or fraction thereof, bordering on a lake or bordering on a river, containing more than eighteen sections of land, which has residing therein one hundred or more inhabitants." But such division can be made only upon a "petition signed by a majority of the legal voters residing within such proposed township." Comp. Laws, 1913, §§ 4079–4081.

An organized township may be dissolved. But the only method provided by statute for dissolution is by an election. Such an election may be called by the board of supervisors, when an application therefor is presented signed by one third of the legal voters of the township. In order to effect a dissolution, however, it is essential that "a majority of all the legal voters in such township" vote in favor of the dissolution. Comp. Laws, 1913, § 4278.

It is elementary that the only function of the courts is to ascertain and give effect to the legislative intent, and, though situations may sometimes arise not contemplated by the legislature, this does not justify the courts in speculating upon what action the legislature might have taken if it had anticipated the situation. 36 Cyc. 1113.

The legislative intent with respect to township organization as disclosed by these statutory provisions is that the will of the majority of the legal voters, residing in the township, shall be controlling in all cases affecting the creation, division, or dissolution of townships. And this court has said that "with us townships are voluntary organizations" (Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092).

The majority opinion is predicated upon the proposition that, inasmuch as our laws make no special provision for the administration of, or for the holding of general elections in, townships lying in part in two counties, the legislature must have intended that such townships should not exist.

Most of the argument with respect to the confusion likely to arise in the administration of a township so situated, and the levy and collection of taxes therein, would apply with equal force to school districts. For, although the legislature has expressly authorized territory in one county

to be annexed to an adjacent school district in another county (Comp. Laws, 1913, § 1142), it has made no provision and prescribed no procedure for the guidance of the county and school officers in solving the administrative questions peculiar to such districts.

Thus it is made the duty of the clerk of a school district to forward to the county superintendent within ten days after a school election a certified list of the officers elected thereat. Comp. Laws, 1913, § 1158. He is also required to prepare and transmit to the county superintendent an annual report. Comp. Laws, 1913, § 1197. The school treasurer's bond must be filed with the county auditor. Comp. Laws, 1913, § 1171. In case the school board refuses to approve of the school treasurer's bond he may present it to the county superintendent for approval. And in case a vacancy occurs in the office of the school treasurer it becomes the duty of the "county treasurer of the county . . . . , upon being notified by the county superintendent or clerk of such school district that such vacancy exists, to perform the duties of treasurer of such school district until the vacancy is duly filled." Comp. Laws, 1913, § 1165. The school board is required to cause a school census to be taken and returned to the county superintendent prior to the 10th day of July of each year. Comp. Laws, 1913, § 1195. The clerk is required to notify the county auditor in writing of the amount of the tax levied by the school board for school purposes. Comp. Laws, 1913, § 1222. The superintendent of schools is required to apportion among the several school districts the state tuition fund (Comp. Laws, 1913, § 1217), and the county tuition fund (Comp. Laws, 1913, § 1225). It is the general duty of the county superintendent of schools to generally superintend the common schools of his county, except those in districts which employ a city superintendent of schools. Comp. Laws, 1913, § 1123. He is required to visit each common school at least once a year (Comp. Laws, 1913, § 1124); arrange for meetings with school officers (Comp. Laws, 1913, § 1126), and convene the members and clerks of school boards once in each year for the purpose of discussing plans and matters for the improvement and general care of the schools. Comp. Laws, 1913, § 1127. In case a vacancy occurs in the office of director or treasurer of school district, the county superintendent of schools is authorized to appoint some competent person to

fill the vacancy until the next annual school election. Comp. Laws, 1913, § 1324.

It will be noted that these different provisions of the school laws refer to school districts lying in one county. Would it not be just as logical to argue that inasmuch as the legislature has made no specific provisions for the government of school districts lying in more than one county it intended that such school districts should not exist, as to argue that, because the legislature failed to provide specifically for the administration of a township lying in part in two counties, it intended that such township should be dissolved or its boundaries changed whenever a change in the county boundaries placed it partly in two counties?

For it is quite apparent that the provisions relative to the administration of school districts are not wholly applicable to, and do not provide for the different contingencies which may arise in, the administration of a school district lying in part in two counties. Yet it is a well-known fact that there are many such school districts in the state. Some of these districts, to the personal knowledge of the writer, have been in operation for many years; and, although the statutory provisions with respect to the administration of such school districts are incomplete, the county and school officers have devised systems of their own, carrying into effect the intent and purpose of the general school laws. And, so far as I know, no serious complications have ever arisen, at least none have ever been brought to this court for determination. So, apparently the difficulties in the administration of the corporate affairs, including the levy and collection of taxes, which the majority members of this court assume to be insuperable obstacles to the conduct of the government of a public corporation lying in part in two counties have, as to school districts so situated, been solved by the school and county officers of this state without serious trouble.

Nor are there any insuperable obstacles to the holding of an election for county and state officers in a township situated in part in two counties. There would be no greater difficulty in holding such election in a township so situated, than in holding it in a city or village similarly situated. And under the laws of this state it has been permissive, since March 12, 1907, to incorporate as a village or city territory lying in more than one county. Laws 1907, chap. 266, Comp. Laws, 1913, §§ 3564a–3564c. Under the laws then existing a village or city might

constitute but one election precinct. Comp. Laws, 1913, §§ 950, 3667.
In other cases the statute declared each city ward to constitute an elec-
tion precinct. Comp. Laws, 1913, § 3667. But, although this was so,
the legislature made no special provision for the conduct of elections
for county and state officers in villages and cities so situated until in
1911. Laws 1911, chap. 314. Prior to that time no statute existed
specifically applicable to elections in such cities and villages, but the
general election laws must have been, and were, applied thereto. The
election laws are necessarily somewhat general, and it has been found
that their provisions do not apply to or cover peculiar or unusual local
conditions which at times exist. See State ex rel. Byrne v. Wilcox, 11
N. D. 329, 91 N. W. 955; McCurdy v. Lucas, 34 N. D. 613, 159 N.
W. 22.

It is for the legislature to provide for the dissolution or change of
boundaries of public corporations. The sole function of the courts
is to ascertain and give effect to the legislative will as expressed in the
statute with respect thereto. I am by no means satisfied that the legis-
lature ever contemplated the situation existing in this case. On the
contrary I am strongly convinced that it never did. Under such cir-
cumstances the court ought not to speculate as to what the legislative
intent might have been in the event it had foreseen the situation. 36
Cyc. 1113.

There is nothing said in the statutes relating to division of counties,
from which it can reasonably be inferred that the legislature intended
that such division should *ipso facto* destroy, or change the boundaries
of, civil townships whose boundaries might be traversed by the new
county lines thus established. In absence of language from which such
intent can be gathered, the laws should not be construed to bring about
this result. State v. Independent School Dist. 46 Iowa, 425; State ex
rel. Lowe v. Henderson, 145 Mo. 329, 46 S. W. 1076.

While the legislature has power, except as restricted by the Consti-
tution, by general law, to provide for the organization or dissolution of
township and other public corporations, it "has been declared that the
power of the state to alter or destroy its corporations is not greater than
the power of the state to repeal its legislation. Exercise of the latter
power has been repeatedly held to be ineffectual to impair the obliga-
tion of a contract. The repeal of a law may be more readily under-

taken than the abolition of cities, townships, or other municipal corporations, or the change of their boundaries." 1 Dill. Mun. Corp. 5th ed. § 338. See also 19 R. C. L. p. 705. As it will not be presumed that the legislature intended to repeal an existing statute unless it has clearly manifested its intention to do so, so it should not be presumed that the legislature intended summarily to destroy, in whole or in part, an existing public corporation unless its intention to do so is clear and unmistakable.