MAMIE LANE v. MINNESOTA STATE AGRICULTURAL SOCIETY.[1]

Oct. 2, 1895.

Nos. 9233—(41).

State Agricultural Society—Negligence—Liability for Personal Injuries.

Held, that the allegations of the complaint, when read in connection with the general laws of the state relating to the defendant, do not show it, the Minnesota State Agricultural Society, to be a public corporation organized for the sole purpose of discharging a governmental function, and therefore exempt from liability to persons injured by its negligence.

Same—Horse Race—Permitting Vicious Horse to Run.

The complaint alleges that the defendant engaged the plaintiff to ride in a running race for horses, which was promoted and controlled by it; that, knowing a certain horse was dangerous and unsafe to run in any

[1] Reported in 64 N. W. 382.

race by reason of a vicious habit of track bolting, of which plaintiff was ignorant, it negligently permitted such horse to run in the race in which she rode, pursuant to her engagement with defendant, without warning her of the unusual danger to which she was thus exposed; that, by reason of such horse bolting the track during such race, she was thrown from her own horse and injured. *Held*, that complaint states a cause of action.

Appeal by defendant from an order of the district court for Ramsey county, Kerr, J., overruling a demurrer to the complaint. Affirmed.

*Ira B. Mills*, for appellant.

*Schoonmaker, Fleming & Hintermister*, for respondent.

START, C. J. This is an appeal by the defendant from an order overruling its demurrer to the complaint of the plaintiff, wherein she alleges that she was injured by the negligence of the defendant, September 10, 1891, while riding in a horse race conducted by the defendant on the State Fair Grounds. Two general propositions are urged by counsel in support of the demurrer: First. That the defendant is a public board or corporation, organized for the sole purpose of discharging a governmental function; and therefore, as such public agent, it is not legally liable for the negligence of its officers, agents, and servants, or any of them. Second. That the facts alleged in the complaint do not constitute negligence on the part of the defendant or its agents. If either proposition is correct, the demurrer is well taken; but we are of the opinion that, tested by the allegations of the complaint which are admitted, neither is correct.

1. The state may and must commit the discharge of its sovereign political functions to agencies selected by it for that purpose. Such agencies, while engaged exclusively in the discharge of such public duties, do not act in any private capacity, but stand in the place of the state, and exercise its political authority. Therefore, when the state creates public corporations solely for governmental purposes, such corporations, while engaged in the discharge of the duties imposed upon them for the sole benefit of the public, and from the performance of which they derive no compensation or benefit in their corporate capacity, are clothed with the immunities and privileges of

the state; and no private action, in the absence of an express statute to that effect, ·can be maintained against them for negligence in the discharge of such duties.   The liability of cities and other municipal corporations created by special charters for negligence in the care of their streets is an illogical exception to this rule, but the rule itself is too well settled, by the almost unanimous agreement of all of the authorities, to be now questioned or discussed. Snider v. City of St. Paul, 51 Minn. 466, 53 N. W. 763.   The rule, however, has no application to private corporations,—that is, to those which are organized by the voluntary act and agreement of their members for their own benefit,—although the creation of such corporations directly promotes the public interest and welfare.   It is also subject to the qualification that public or quasi public corporations are not exempt from liability, to which other corporations are subject, for negligence in managing or dealing with property or rights voluntarily held by them for their own profit and advantage, although inuring ultimately to the benefit of the public.   2 Dillon, Mun. Corp. §§ 980–984;  Oliver v. Worcester, 102 Mass. 489;  Mersey Docks v. Gibbs, 11 H. L. Cas. 686;  Glavin v. Rhode Island Hospital, 12 R. I. 411;  Moulton v. Scarborough, 71 Me. 267;  Hannon v. St. Louis Co., 62 Mo. 313.

The allegations of the complaint, standing alone, make a prima facie case of a private corporation, engaged, for its own benefit, in an undertaking outside of any public duties, viz. promoting, controlling, and conducting a horse race,—a case not within the rule of immunity applicable to public corporations, institutions, and agencies created solely for governmental purposes.   The demurrer admits the corporate existence and acts of the defendant as alleged, but its counsel claims (1) that the court must take judicial knowledge of the general statutes of the state relating to the defendant and its organization, and read them as if they were incorporated in the complaint; and (2) that such statutes show that the defendant is a. public or quasi public corporation, organized for the sole purpose of discharging governmental functions.

We assume, without so deciding, that the first of these claims is correct, but we cannot take judicial notice of the provisions of the defendant's articles of incorporation, adopted and filed pursuant to the statute under which it was organized; nor can we assume

that it has no capital or property derived from membership and entrance fees, from fees for admission to its exhibitions, and from the sale of privileges to private parties to conduct, upon the grounds controlled by it, a multitude of independent shows and enterprises. On the contrary, it is a matter of common knowledge that it does derive a large revenue from these sources, over which the state has no control. A consideration of the general laws relating to the defendant does not justify the claim of its counsel that it is not liable for the negligence alleged in this action because it is within the rule of immunity to which we have referred. At the outset of our examination of such laws, we are embarrassed by the fact that there is nothing in the record to show when or under what particular law the defendant was incorporated. This necessitates a review of the entire legislation in reference to the defendant.

Pub. St. 1858, c. 17, §§ (334) (338), authorized the incorporation of agricultural societies of the character of the defendant, and by implication authorized a division of the property of the corporations upon dissolution. Laws 1860, c. 17, made ample provisions for incorporation of county agricultural societies. Section 2 of this act provided that such corporations should have perpetual succession, with the right to adopt a seal, constitution, and by-laws, to purchase, hold, sell, and convey all real and personal property necessary to promote the objects of the corporation, and to have police and full control of its grounds. Provision was made by section 3 for filing a copy of the constitution and by-laws of such corporations in the office of the register of deeds, and for the making of annual reports of their receipts and disbursements to the governor of the state. Sections 4, 5, and 6 provided for annual meetings of the societies, for the election of officers, and for two delegates from each county society, who, together with its president as delegate ex officio, were to represent their county in the state agricultural society. These delegates were to meet together, at the city of St. Paul, or such other place as a majority should determine, on the first Wednesday in February in each year, (see amendment, Laws 1864, c. 50,) and at the first meeting after the passage of the act file articles of their incorporation in the office of the secretary of state. Section 8 of this act declared that the State Agricultural So-

ciety (presumably the defendant) "shall possess all of the powers enumerated in section two," to which we have referred.

This chapter 17, Laws 1860, was repealed by G. S. 1866, c. 122, but such repeal did not affect any act done or any right accruing or accrued or established under the statute before its repeal. Id. c. 121, § 4. Therefore, if the defendant became incorporated under this statute of 1860, its repeal did not work a dissolution of the corporation. This would seem to be so without reference to the saving clause of the repealing statute. The act of 1860 was substantially re-enacted by Laws 1867, c. 21. In 1868 the corporate existence of the defendant was expressly recognized by the legislature, which appropriated to it $1,000, and $2,000 pro rata to the several county societies, but no part of either appropriation was to be used for the payment of officers' salaries or fees or as a premium for horse racing. Laws 1868, c. 19. This last act required the defendant to keep an account of the manner in which the state appropriations to it were expended, and transmit the same annually to the governor of the state. In the year 1876 the legislature confirmed and legalized the incorporation of the defendant. Laws 1876, c. 29.

There was no further legislation affecting the legal status of the defendant prior to the year 1883, and it is obvious, without discussion, that prior to this date the defendant was a private corporation, and not within the rule of immunity claimed for it. This proposition is not seriously controverted by counsel, but it is claimed that by the legislation of 1883, 1885, and 1887 the status of the defendant was materially changed, and that thereafter it became, and now is, essentially a public corporation or agency for the sole purpose of discharging a governmental function. A brief analysis of this subsequent legislation will show the unsoundness of the claim.

By an act entitled "An act to reorganize the State Agricultural Society and to appropriate money thereto and to other agricultural societies," approved March 5, 1883 (Laws 1883, c. 142), a change was made in the membership of the defendant and its officers. It was, however, provided that nothing in the act should be construed as annulling any existing life or annual membership in the defendant. The fee for life membership was fixed at $10, and the annual dues at $1 for each member, as a condition to the right of voting at the

annual meetings of the defendant. The act also created a board of auditors, consisting of the governor and three other persons, to be appointed by him, and confirmed by the senate, to examine all of the transactions of the defendant, and to report to the legislature at each session; and further required the by-laws of the defendant to be submitted to this board for approval. Other than this no attempt was made by the act to reorganize or deprive the defendant of any existing corporate right or power. This act increased the annual appropriation to the defendant, to aid it in paying premiums, to $4,000, and the annual appropriations to county societies for a like purpose to $6,000, and repealed the appropriations of 1868 and all inconsistent acts and parts of acts. Assuming that the defendant accepted the provisions of this act as to the change of membership, and for a qualified state control in consideration of the increased appropriation, still there was no essential change in the status of the defendant, for it continued to be a corporation, with all the powers, rights, and privileges which it acquired by virtue of the prior acts of 1860 and 1867, relating to its organization.

By Laws 1885, c. 174, the county of Ramsey was authorized to convey to the state of Minnesota certain real estate, to be held by it for the public purpose, and for no other, of exhibiting annually thereon, under the management of the State Agricultural Society, or its successor, the agricultural, stock-breeding, horticultural, mining, mechanical, and industrial products and resources of the state. This act further provided that there should be held by the defendant, upon the premises to be conveyed, such exhibit as the society might provide for, and at such times as it might prescribe. It also made an appropriation of $100,000, to be expended under the direction of the society for permanent buildings on the premises, the custody and control of which were given to the defendant.

By Laws 1887, c. 181, the membership of the defendant was enlarged, the fee for life membership abolished, the time of holding its annual meeting changed; police powers were conferred upon its board; its secretary was required to make to the governor an annual report, showing in detail the financial condition and proceedings of the society for the current year; the provisions of the act of 1883 in reference to its board of managers and the board of auditors

to examine all the transactions of the society were re-enacted, and the act of 1883 repealed, except the part thereof relating to the annual appropriations to the defendant and county societies.

Laws 1891, c. 163, § 3, appropriated $20,000 to pay the debts of the defendant.

These acts of 1883, 1885, 1887, and 1891 seem to indicate that the legislature regarded the defendant as a quasi public corporation, but they must be construed with reference to the previous status of the defendant, as a private corporation, and the further fact that the changes made by the legislature in the membership and control of the affairs of the defendant were accompanied by substantial benefits to the defendant, which were naturally calculated to induce it to accept such legislation, and, if it did so, it could not thereafter question its validity.    State v. Sibley, 25 Minn. 387.    It is also to be observed that this legislation does not assume to create a new corporation.    It simply deals with an existing one, giving it aid, and in consideration thereof controlling, in a measure, its affairs.    But it does not follow, because the state makes annual contributions to assist the defendant in paying premiums, and, to make it certain that its bounty shall not be misapplied, it has provided for an examination of the defendant's accounts, and exacts a report of its transactions from it, that it is a public corporation for the sole purpose of discharging a governmental function;  otherwise railway corporations which have received state aid, and must report to the state as to their earnings and other matters, banking corporations, religious corporations, which indirectly receive annually state aid by exemption of their property from taxation, all county agricultural societies, which receive state aid, and many other similar corporations must be classified as state agencies, and held not liable in a private action for their negligence whereby individuals are injured.

So far as can be gathered from this legislation and the allegations of the complaint, the defendant may be a voluntary corporation.    It does not appear that the state has any voice in the selection or control of its officers, or in fixing their compensation, or in the disposition of its property and revenues, except such as it receives from the state, or as to the character and extent of the annual exhibitions it may give, or the fees to be charged for admission thereto.    If the defendant refuses to give an annual exhibition

of the products and resources of the state, the state may withdraw its appropriations and the use of the fair grounds, but it cannot otherwise coerce the defendant. In short, we are unable, without further information than that afforded by the record in this case as to the defendant's articles of incorporation, by-laws, business, revenues, and whether or not the latter are impressed with any public trust, to discover anything in the general laws of the state relating to the defendant to rebut the prima facie case made by the allegations of the complaint, to the effect that the defendant was, at the time of committing the act of negligence complained of, a private corporation, conducting an exhibition for its own benefit.

2. It is claimed by defendant, in support of its second ground of demurrer, that track bolting is not a dangerous or vicious habit in a horse, "any more than balking, or the habit of running away," and that the defendant was not bound to notify the plaintiff that one of the horses, known as "Isaac B.," which it permitted to run in the race, was a "track bolter." We have no knowledge of the meaning of the term "track bolting," except as we are advised by the allegations of the complaint, which state that track bolting is a vicious and dangerous habit in a horse, rendering him dangerous and unsafe to run in any race, and that "Isaac B." was such a horse. This conclusion is amply supported by the allegations of fact in the complaint as to what this horse actually was and did in the race in which the plaintiff rode pursuant to her contract with the defendant. It is made clear by these allegations that the plaintiff was injured by the horse in question bolting the track, as was his dangerous and vicious habit to do, and that defendant, being advised of this habit (the plaintiff being wholly ignorant of it), knowingly permitted the horse to run in the race in which the plaintiff rode without informing her of the unusual danger to which she was thus exposed, and of which she was ignorant. If these allegations are true, this was a manifest violation of the defendant's duty to the plaintiff, as its employé, and it was guilty of actionable negligence in the premises.

Order affirmed.