(97 N. W. Rep. 848.)

---

ARRISON *v.* COMPANY D, NORTH DAKOTA NATIONAL GUARD, ET AL.

Opinion filed January 11, 1904.

**National Guard—Incorporation—Armory Buildings—Mechanics' Liens.**

1. A corporation organized under chapter 101, p. 159, Laws 1897, which authorizes three or more members or ex-members of the national guard to incorporate for the purpose of erecting an armory building, is a private, and not a public corporation; and, save as to taxes and charter fees, which are excepted by the act, it has the same powers, and is subject to the same duties and liabilities, as any other

private corporation, and its property is subject to the operation of mechanics' lien laws.

Appeal from District Court, Ramsey county; *Cowan, J.*

Action by J. M. Arrison against Company D, North Dakota National Guard, and another. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Townsend & Denoyer,* for appellants.
*R. Goer (Gooler & Gooler,* of counsel), for respondents.

YOUNG, C. J. This is an action to foreclose a mechanic's lien. The complaint alleges that the defendant, "Company D, North Dakota National Guard," is a corporation organized under the authority of section 1425a, Rev. Codes 1899; that said corporation contracted with the defendant O. T. White for the erection of an armory building upon certain lots in Devils Lake; that the plaintiff performed work, labor, and services as a subcontractor on said building of the agreed and reasonable value of $43.47; that he filed his claim for a lien therefor under chapter 77 of the Civil Code, and asks judgment for that sum, with interest, and the foreclosure of his lien. The defendants joined in a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendants appeal from the order overruling the same.

The single contention of the appellants is that an armory building erected and owned by a corporation organized under section 1425a, Rev. Codes 1899, is not subject to mechanics' liens. This section was enacted as chapter 101, p. 159, Laws 1897, and is as follows: "Any number of persons, not less than three, being members or ex-members of regularly enrolled companies of the national guard of this state, may form a corporation for the purpose of erecting, obtaining and maintaining a building to be used by the company of which they are members or ex-members, as a military training school, armory and place of meeting, which corporation shall possess the powers and be subject to the duties and liabilities of other corporations, except as herein otherwise provided. The principal office of said corporation must be located at the town or city wherein the national guard company for the benefit of whom the military training school is erected or maintained, is stationed. The general management of such company shall be

vested in a board of not less than three nor more than eleven directors, each of whom shall during his term of office be a member of the national guard of the state of North Dakota. Such corporation may lease or buy real estate upon which to erect a military training school, armory or drill hall to be by the corporation erected or maintained, and may purchase or lease land upon which a rifle range may be maintained, and all such land, and the buildings thereon which are used for a military training school, drill hall, armory or rifle range, shall be exempt from taxation. The articles of incorporation of such corporation shall be filed and a certificate of incorporation issued by the secretary of state without fee." Counsel for appellants contend that Company D, North Dakota National Guard, is "a corporation in aid of a distinct branch or arm of the government," organized for .the benefit of the state, and not for private gain; and that its property is, from reasons of public policy, exempt from the remedy afforded by the mechanics' lien laws. We are of opinion that this corporation does not come within the protection of the doctrine which is invoked. There is a well-settled rule, resting upon grounds of public policy, that "mechanics' lien laws do not, in the absence of express provisions, apply to public buildings erected by states, counties, and towns for public uses." 2 Jones on Liens, section 1375, and cases cited, note 3. It is well settled that "public property cannot be the subject of such a lien unless the statute shall expressly so provide. It is by implication excepted from lien statutes, as much as from general taxation laws, and for the same reason." *Knapp* v. *Swaney,* 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397, and cases cited. In many cases the fact that the property of the corporation could not be sold upon execution is held to be decisive against the right to a mechanic's lien. *Board* v. *Greenbaum,* 39 Ill. 609; Jones on Liens, section 1375; *Loring* v. *Small,* 50 Iowa 271, 32 Am. Rep. 136; *Charnock* v. *Dist. Tp.* (Iowa) 50 N. W. 286, 33 Am. Rep. 116; *Brinckerhoff* v. *Board,* 6 Abb. Prac. (N. S.) 428; *Leonard* v. *City of Brooklyn,* 71 N. Y. 498, 27 Am. Rep. 80; *Patterson & Co.* v. *Penn. Reform School,* 92 Pa. 229; *Knapp* v. *Swaney,* 56 Mich. 345, 23 N. W. 162, 56 Am. Rep. 397. In Philipps on Mechanics' Liens, section 179, it is said that: "Property which is exempt from seizure and sale under an execution upon grounds of public necessity must, for the same reason, be equally exempt from the operation of the mechanics' lien law, unless it appears by the law itself that property

of this description was meant to be included." See, also, 20 Am. &
Eng. Enc. of L. (2d Ed.) 295, and cases cited. The ground upon
which the property of a municipal or strictly public corporation
is exempt from mechanics' liens is stated in *Board* v. *Greenbaum,
supra,* to be "that such a proceeding against a municipal corpora-
tion would break it up, and that, possessing the taxing power, which
it can be compelled by mandamus to exercise, its debts can be paid
and all its liabilities met in that mode. Creditors against such
corporation have this distinct and most efficient remedy." In this state
express provision is made by statute for indemnity to those who per-
form labor upon or furnish material for public works. Chapter 78 of
the Civil Code provides that: "Whenever any public officer shall
under the laws of this state enter into contract in any sum ex-
ceeding one hundred dollars with any person for making any public
improvements, or for constructing any public building or making
repairs on the same, such officer" shall exact a bond in amount
equal to the contract price to secure all indebtedness for labor
and material, and any person to whom there is due any sum for
labor or material furnished is authorized to bring an action upon
the bond for his indebtedness. The defendant is not a public cor-
poration. Corporations are classified and defined by the Civil Code
as follows: Section 2854: "Corporations are either (1) public; or
(2) private." Section 2855: "Public corporations are formed or
organized for the government of a portion of the state. Such cor-
porations are regulated by the Political Code or by local statutes."
Section 2856: "All corporations not public are private." The de-
fendants cannot claim immunity upon the ground that it is a public
corporation, for it is clear that it cannot be so classified. There are,
however, certain private corporations, which, because of their nature,
purposes, duties to the public and the direct interest of the public
therein, are generally held to be exempt from the operation of
mechanics' lien laws, unless the intent to extend the remedy to
them is plainly expressed. This class includes those corporations
in which the interest of the public is direct and enforceable, such
as railroads, canals, and turnpike corporations. See 1 Freeman
on Executions, section 126a. The classification made by Chief
Justice Thompson in *Foster* v. *Fowler,* 60 Pa. 27, has been uni-
formly approved both by courts and textwriters: "Most people
acquainted at all with corporate action, understand that corpora-
tions other than municipal, which are purely public, naturally divide

into public and private corporations; that is, into those that are agencies of the public directly affecting it and those which only affect it indirectly by adding to its prosperity in developing its natural resources or in improving its mental or moral qualities. Of the former are corporations for the building of bridges, turnpike roads, railroads, canals, and the like. The public is directly interested in the results to be produced by such corporations, in the facilities afforded to travel and the movements of trade and commerce. It is well settled that this use is not to be disturbed by the seizure of any part of their property essential to their active operations by creditors. They must recover their debts by sequestering their earnings, allowing them to progress with their undertaking, to accommodate the public. This direct benefit to and accommodation of the public very clearly distinguishes this class of corporations from the second class, viz., private corporations, or those in which the public is but indirectly interested, such as mining and manufacturing or coal and iron companies, etc., or libraries, literary societies, schools, and the like. Whether they progress or cease, the public is not directly affected, and hence liens are enforceable against them without, as a general thing, any regard to their effect upon their operations." *Girard Point Storage Company* v. *Southwark Co.,* 105 Pa. 248; *McLeod* v. *Central Normal School,* 152 Pa. 575; 25 Atl. 1109; *Guest* v. *Lower Merion Water Co.* (Pa.) 21 Atl. 1001, 12 L. R. A. 324; Philipps on Mechanics' Liens, section 180. The courts, while generally denominating the first class as *quasi* public corporations, "have with practical unanimity held that, if the whole interest does not belong to the public, or if the corporation is not created for the administration of political or municipal powers, it is a private corporation." 1 Beach on Pub. Corp. 7. The court, in *McLeod* v. *Central Normal School, supra,* in pointing out the distinction between private corporations and *quasi* public corporations not of a strictly private nature, said that: "In order that a private corporation may be regarded as *quasi* public, it must exist directly for the public use. The corporate franchise must be such as is held in the nature of a public trust, and such that the public has standing to assert and enforce its right. * * * A railroad company is bound to maintain and operate its line. It cannot alienate its franchise, or the property essential to the operation of the road, without express authority. It is bound to carry all persons and goods offered it for transportation, and this

public right is capable of enforcement. *Thomas* v. *Railroad Co.,* 101 U. S. 71, 25 L. Ed. 950; *Canal Co.* v. *Bonham,* 9 Watts & S. 27, 42 Am. Dec. 315; *Union Pacific R. R. Co.* v. *Hall,* 91 U. S. 343, 23 L. Ed. 428; *R. R. Com'rs* v. *Railroad Co.,* 63 Me. 269, 18 Am. Rep. 208; *State* v. *R. R. Co.,* 29 Conn. 538; *People* v. *New York Cent. & H. R. R. Co.,* 9 Am. & Eng. R. Cas. 1. 'The true criterion, therefore, by which to judge of the character of the use, is whether the public may enjoy it by right or only by permission.' Mills on Eminent Domain, section 14. If by right, then the property of the corporation may be said to be in the direct use of the public at large, though under the control of private persons or of a corporation. It is not so much a question of what public services the corporation is actually performing as what public services it must perform." Again, in *Twelfth Street Market Co.* v. *Philadelphia, etc., R. R. Co.* (Pa.) 21 Atl. 989, it was said that: "The test whether a use is public or not is whether a public trust is imposed upon the property, or whether the public has a legal right to the use which cannot be gainsaid or denied or withdrawn at the pleasure of the owner. * * * The general public must have a definite and fixed use of the property; a use independent of the will of the private person or corporation in whom the title is vested; a public use, which cannot be defeated by the private owner, but which is guarded and controlled by law." It will thus be seen that the test whether the property of a corporation may be subjected to a mechanic's lien is not merely whether the public is interested and aided by it. It must also be an enforceable interest. Where this interest exists and is enforceable, the right to a mechanic's lien has been generally denied, as in the case of railroad, canal, turnpike corporations, etc. Where the benefit is indirect, and the continuation of the use is optional with the corporation, the exemption does not exist. That was the case in *McLeod* v. *Central Normal School, supra,* in which a mechanic's lien had been filed against the Central Normal School, a corporation recognized by the state and the recipient of state aid. The state also appointed a number of its trustees. It was said that: "Whilst normal schools are no doubt engaged in a most necessary and useful public work, and have been valuable auxiliaries in the education of the masses of the people, the mere fact that they have been incorporated for this particular purpose, and are actually engaged in this work, will not of itself give them the essential qualities of a public corporation. Their

charter is in form and effect that of a private corporation merely. Their work is but indirectly for the public use, and they must be answerable for their debts and engagements under the same forms of procedure and to the same extent as other private corporations and individuals." See also, *Girard Point Storage Co.* v. *Southwark Co., supra.*

It is clear, we think, that the defendant is not a *quasi* public corporation. It may be conceded that by erecting and maintaining an armory building it aids the state in educating its citizens in military science. But the continuation of this benefit is optional with the defendant. It is not legally bound to maintain the building. It may decide not to do so. The state does not own or control the building, and has no voice in the management of the defendant corporation, and the latter may decide to wind up its affairs and sell its property whenever it chooses to do so, and the state has no standing to interfere. Further, while it may be said that the erection and maintaining of an armory building is not profitable, it is not wholly without compensation. The state makes an annual appropriation for rental. See chapter 112, p. 153, Laws 1899, and chapter 20, p. 26, Laws 1903. The only particulars in which this corporation differs from other private corporations are those enumerated in chapter 101, p. 159, Laws 1897, under which it is organized. By incorporating under, and complying with, this act, the corporation secures the promise of the legislature of immunity for its property from taxation and from the payment of the fees of the secretary of state. The act does not exempt the defendant from any further liabilities. On the contrary, it expressly provides that in all other respects the "corporation shall possess the powers and be subject to the duties and liabilities of other corporations." This corporation is therefore liable for its debts, and is subject to the ordinary remedies for their enforcement, the same as any other private corporation.

The demurrer was properly overruled, and the order is affirmed. All concur.