W. H. HADLER, Respondent, v. NORTH WEST AGRICULTURAL, LIVE STOCK & FAIR ASSOCIATION, a Public Corporation, Appellant.

(224 N. W. 193.)

Opinion filed March 4, 1929.   Rehearing denied April 6, 1929.

*Halvor L. Halvorson,* for appellant.

*McGee & Goss* and *Sinkler & Brekke,* for respondent.

BURR, J. This matter comes before us on appeal from an order overruling a demurrer to the complaint. The plaintiff alleges he sustained injuries because of the negligence of the officers of the defendant association. Defendant contends it cannot be sued in tort.

The complaint alleges that the defendant, "a public corporation, duly organized and existing under and by virtue of the laws of North Dakota, chapter 217 of the Session Laws for 1923 (§§ 1866a2 to 1866a7 of the Supplement) for the purpose of conducting on what is known as the fair grounds of said association, closely adjacent to the city of Minot, N. D., annually, a fair, known as the Northwest Fair, and pursuant to said act the defendant was on July 3, 1926, and both before and after said date upon said fair grounds, conducting and operating a fair, known as the Northwest Fair, and was in the entire and exclusive control and management thereof and of its property,

inclusive of its race track fence and enclosures and buildings adjacent thereto, pursuant to said chapter 217 Laws of 1923."

The complaint then proceeds to state that on July 3, 1926 the defendant was conducting a fair on its grounds at Minot and at that time, having entire care, custody and control of the track was conducting an automobile race; that one of the cars traveling at a high rate of speed, swerved from the track, struck plaintiff and injured him; and that this happened through the negligence and carelessness of the officers of the defendant.

The defendant demurred to the complaint on the ground "that the court has no jurisdiction of the defendant and that the court has no jurisdiction of the subject of the action. That there is a defect of parties defendant and that the complaint does not state facts sufficient to constitute a cause of action." This demurrer being overruled the defendant appealed.

Defendant says "this appeal raises a question of law solely, 'Is the state of North Dakota or a public subdivision thereof, engaged in the exercise of governmental functions liable to an action for tort as such state or governmental agency?'"

The real issue is whether the complaint shows the defendant is a public department of the state of North Dakota, organized for the purpose of carrying on governmental enterprises and engaged in governmental functions.

The complaint shows the defendant as organized under the provisions of chapter 217 of the Laws of 1923. Section 1 of the act (§ 1866a1 of the Supp.) says "that a Northwest Agricultural Live Stock and Fair Association, Fair or Exposition shall be held annually at or adjacent to the city of Minot" but the next section shows that this defendant association is merely the Ward County Association under a different name. Section 2 is as follows:

"Conditions to be Complied with by the Ward County Fair Association. If the Ward County Fair Association now existing and conducting a fair at Minot, N. Dak., by proper resolution duly passed by it and approved by the county commissioners of Ward county, to the effect that it accepts all the conditions of this act, then and in that event such association shall become entitled to receive the appropriation hereinafter named upon the conditions set forth in this act, and there-

fore to·be called The North West Agricultural, Live Stock and Fair Association, and this without forfeiting or otherwise affecting its rights to such county aid as may now or hereafter be provided. The said Association may acquire the title to not less than seventy acres of land at or adjacent to the city of Minot in said state, and such Association may, and it is hereby empowered and authorized, to convey the title of the land so held and acquired by it unto the State of North Dakota, which property, when so conveyed, shall be held by the state of North Dakota for the following purposes and no other: For the purpose of exhibiting thereon, under the management of such association, or its successors, annually, the agricultural, stock breeding, horticultural, mining, mechanical, industrial and other products and resources of the state of North Dakota, including proper exhibits of the arts, sciences and all other public displays pertinent to and dependent upon exhibitions and expositions of human art, industry and skill. The said association may use such portion of its funds as may be necessary for the acquisition of title to the land so held or to be purchased by it for use as fair grounds, and the balance thereof shall be and constitute a fund towards the construction of buildings and other permanent improvements thereon."

Section 3 of the Act says:

"Custody and Control of Grounds. The custody and control of the premises upon which said fair is located shall be vested in the North West Agricultural, Live Stock and Fair Association, and the general offices thereof shall be located and maintained either upon the premises so acquired or at some suitable place in the city of Minot, and said association is hereby authorized, required and empowered to maintain its said offices as aforesaid wherein shall be contained the property and records of such association, and the entire care, custody, management and control of said premises and the structures thereon shall be vested in said Association."

Section 4 provides:

". ·. . Should the State of North Dakota cease to appropriate the sum of at least $2,500 annually in connection with said fair, then the title of said premises shall revert to and become the property of the Association that transferred the same to the state; . . ."

The same paragraph provides that "its board of directors shall con-

sist of eleven persons;" and that "said Association shall appoint an advisory committee consisting of the governor, commissioner of agriculture and labor and state auditor together with one resident freeholder from each judicial district of the state; which said committee is privileged to attend the meetings of the association, and is at all times to be fully advised in regard thereto," and that "the state shall never become liable for any of the debts and liabilities of said associa-. tion save as appropriations shall be made therefor from time to time by the legislative Assembly."

Section 5 authorizes the board of directors to appoint an executive committee consisting of five members who shall keep an accurate account of the expenditures and all moneys appropriated to it by the state, and make a report of the same with the "statement of their doings and such account of their expenditures to the governor on or prior to the first day of January of each year following the holding of a fair."

An analysis of the law under which the defendant association is organized shows the defendant is merely the Ward County Fair Association under a different name; that its lands and property are held in trust by the state and revert to the Ward County Fair Association if appropriations are not made; the fair is not governed by the board of county commissioners nor by any of the state officials neither has the state anything to do with the election of these directors, nor any control over their actions. The annual appropriation made by the state for the support of the fair is to be used to buy lands or to construct buildings, and other improvements. When the state ceases to appropriate money then these lands and public improvements revert to the Ward County Fair Association. The appropriation made by the state is paid to the treasurer of the association upon the order of the president of the Association, attested by the secretary. See § 1866a5 of the Supplement. The appropriation is not paid to the treasurer of the county nor is there any provision making the receipts of the fair public funds.

At the time of the passage of this act there were two statutory methods for organizing county fairs. Section 1867 of the Compiled Laws provides for an organization with executive officers and directors from among the resident free holders of the county and in such case an application may be made to the county commissioners for county

aid and if the board of county commissioners be satisfied "that such association intends in good faith to hold a fair within said county annually for the exhibition of agricultural, horticultural, mechanical and manufactured products of the county, live stock and such articles as are usually exhibited at such fairs" the board may furnish county aid. Section 1874a1 to § 1874a4 of the Supp., being chapter 102 of the Laws of 1919, makes provision for the county establishing a fair, —the county commissioners to purchase or lease the site, and operate and manage the fair, when authorized by the voters of the county.

There is nothing in the complaint to indicate how the Ward County Fair Association was organized—whether it was organized under the provisions of § 1867 of the Compiled Laws or under the provisions of §§ 1874a1 to 1874a4 of the Supplement being chapter 102 of the Laws of 1919.

However, chapter 217 of the Session Laws of 1923 providing for the Northwest Agricultural, Live Stock and Fair Association recognizes that the Ward County Fair may secure county aid; for § 2 of the act provides that the appropriation given by the state is made "without forfeiting or otherwise affecting its (Ward County Fair Association) rights to such county aid as may now or hereafter be provided." Hence for the purposes of this demurrer we are justified in assuming the Ward County Fair Association is not the county of Ward engaged in maintaining a fair but an association organized under the provisions of § 1867 of the Compiled Laws of 1913.

The first two grounds of demurrer are based on the theory that the defendant is a part of the state and therefore cannot be sued, and that the defect of parties defendant arises from the fact that the state is not joined.

Section 4498 of the Compiled Laws of 1913 classifies corporations as public and private; § 4499 says: "Public corporations are formed or organized for the government of a portion of the state;" while § 4500 says: "All corporations not public are private."

It is conceded that if the Ward County Fair Association be merely a private concern engaged in an adventure for the general benefit and improvement of the public it is a private corporation and subject to suit in tort. The fact that the complaint calls it a public corporation

does not make it so. The status of the defendant association is determined by the law which creates it.

In Gross v. Kentucky Bd. of Managers, 105 Ky. 840, 43 L.R.A. 703, 49 S. W. 458, the court said the rule that the state cannot be sued "does not apply to a corporation created by the state for certain public purposes." The character of the organization "depends on the powers given it and not upon the name by which the legislature may call it."

A fair association is not necessarily a public corporation even though its object be of a public character (Tinsman v. Belvidere Delaware R. Co. 26 N. J. Law, 148, 69 Am. Dec. 565) ; or that it is not incorporated for pecuniary profits (Clark v. Monroe County Fair Asso. 203 Iowa, 1107, 212 N. W. 163) ; or that it may receive appropriations from the state for certain specific purposes (Tri-State Fair v. Rowton, 140 Tenn. 304, L.R.A.1918F, 657, 204 S. W. 761 ; Lane v. Minnesota State Agri. Soc. 62 Minn. 175, 29 L.R.A. 708, 64 N. W. 384). Even where the association is created by a special act, required to make annual reports to the legislature and authorized to hold state fairs, it does not by reason thereof become a public corporation. In Downing v. Indiana State Bd. of Agri. 129 Ind. 443, 12 L.R.A. 664, 28 N. E. 123, 614, it is shown the fair association created by statute received an annual state appropriation, had no shares of stock, the trustees had no financial interest in the property, were to consult as to rules, provisions and conditions of the agricultural interests, make annual reports, hold state fairs and have entire control over them, and fix the amount of the various premiums offered, but the court said it was a private corporation "and it matters not to what extent the state has voluntarily aided it by contributions and appropriations." The court said further:

"The corporation now owns a large amount of property. The main funds it has handled and used have been received from private citizens, . . . and funds received from state fairs held by the board. The members of the board have not been chosen by the state, they are not state officers. It has not been a state institution. It is true there are no shares of stock issued and held by the trustees or private individuals; neither are shares of stock issued by colleges or charitable institutions or universities, which are private corporations; and it is not necessary to make it a private corporation that shares of stock be issued."

Again the court shows the fact that the trustees may have no financial interest in the property of the corporation, that is that they are not the owners in such a sense that they could sell it, is immaterial for the trustees of a college cannot do that. The state has no right to appropriate the property of the association to the use of the state and the mere fact that the design is to provide for some good that is useful to the public is not controlling as "no corporation is ever created by the state unless some good to the public is surmised," and "if the whole interest does not belong to the government . . . the corporation is private."

Where a fair association is so organized that it may hold fairs or not as it sees fit, and is free from governmental control and interference it cannot be said to be a public corporation. In Com. v. Bacon, 13 Bush, 210, 26 Am. Rep. 189, in a matter involving "a corporation created by the act of the General Assembly," the court said that such society "is a strictly private corporation. It owes no legal duty to the public. It may hold fairs or not as its managers may decide, and is as free from the interference or control of government as a private individual, and cannot therefore enjoy any privileges which may not be enjoyed by an individual." (26 Am. Rep. 191).

One of the real tests "whether a use is public or not is whether a public trust is imposed upon the property" so that the general public has a "definite and fixed use of the property,—a use independent of the will of the private person or corporation in whom the title is vested, a public use which cannot be defeated by the private owner, but which is guarded and controlled by the law." Twelfth-Street Market Co. v. Philadelphia & R. Terminal R. Co. 142 Pa. 580, 21 Atl. 990; McLeod v. Central Normal School Asso. 152 Pa. 575, 25 Atl. 1109. In Arrison v. Company D, N. D. Nat. Guard, 12 N. D. 554, 558, 98 N. W. 83, 1 Ann. Cas. 368, where a company of the National Guard erected an armory and, in a suit to foreclose a mechanic's lien, defended on the ground that the corporate body was "in aid of a distinct branch or arm of the government," this court said the defendant cannot claim immunity upon the ground that it is a public corporation, and then proceeded to differentiate certain private corporations "which because of their nature, purposes, duties to the public and the direct interest of the public therein are generally held to be exempt from the opera-

tion of mechanic's lien laws," from other "private corporations, or those in which the public is indirectly interested, such as mining, manufacturing or coal and iron companies, etc., or libraries, literary societies and the like. Whether they progress or cease the public is not directly affected. . . ." Thus, a corporation may exist solely for the benefit of the public and yet be a private corporation.

State ex rel. Robinson v. Carr, 111 Ind. 335, 12 N. E. 318, where the State University was held not to be a public corporation in a technical sense the court saying:

"A corporation may be private and yet the act or charter of incorporation contain provisions of a purely public character introduced solely for the public good. . . . A public corporation is one that is created for political purposes, with political powers, to be exercised for purposes connected with the public good, in the administration of civil government; an instrument of the government subject to the control of the legislature; and its members officers of the government, for the administration or the discharge of public duties . . . quoted from University of Maryland v. Williams, 9 Gill & J. 385, 388, 31 Am. Dec. 72. As stated in Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. ed. 629, "that a corporation is established for purposes of general charity, or for education generally, does not per se make it a public corporation, liable to the control of the legislature."

That an ordinary fair association may be liable for tort goes without question. In Dunn v. Brown County Agri. Soc. 46 Ohio St. 93, 1 L.R.A. 754, 15 Am. St. Rep. 556, 18 N. E. 496, the complaint showed "the defendant is a corporation duly incorporated under the laws of the state of Ohio and in its corporate capacity held its regular annual fair on its fair-grounds . . . to which fair the public were generally invited to attend" and plaintiff was injured because of negligence and carelessness in erecting a grand stand, etc. A demurrer to the complaint was overruled and on appeal the court said:

"A county agricultural society, organized under . . . 44 Ohio Laws, 70 and amendments thereto, . . . is liable in its corporate capacity to an action for damages by a person who, while attending a fair held by it, and rightfully occupying the seats, sustains an injury in consequence of its negligence in their construction."

This act under which the defendant was organized permitted the

organization to sue and to be sued "and perform all such acts as they deem best calculated to promote the agricultural and household interests of the county and state."

The county commissioners were authorized "to contribute out of the county treasury, for the purchase or lease of such sites a sum equal to or greater than that paid by the society for the purchase or lease thereof."

The society could sell its fair grounds. "The money arising from the sale is required to be paid into the county treasury, and cannot be paid out without the consent of the commissioners." They were required to report annually to the State Board of Agriculture. Nevertheless the court says that such an organization formed under such an act is not "invested with any political or governmental functions, or made public agencies of the state, to assist in the conduct of its government. Nor can it be said . . . that such persons are mere passive recipients of the corporate powers and duties, with no power to decline them or refuse their execution. . . . It is true, their purpose may be public in the sense that their establishment may conduce to the public welfare, by promoting the agricultural and household manufacturing interests of the county; but in the sense that they are designed for the accomplishment of some public good, all private corporations are for a public purpose. . . . The state neither compels their incorporation, nor their conduct afterwards. They may act under the organization or at any time dissolve or abandon it. . . . The society is absolutely free to determine whether it will erect any buildings, . . . and if any what kind and of what material. . . . In the execution of the powers conferred on it, the society selects its own agents, is invested with the control over them, and may for its own indemnity, exact such guarantees against their want of skill and care . . . as it may deem proper and be able to obtain. . . . The statute imposes no limitation for the amount to be charged for entry fees, or for admission to the fair. . . . They shall offer premiums 'as they deem proper' is the language of the statute. The income may many times exceed the expenditures."

It is true there were members of this society who became such by voluntary subscription. The statute under which the Ward County Fair Association must have been organized does not prevent these

voluntary memberships. In fact it expressly recognizes that this county fair association shall be organized with executive officers and directors who are citizens of the county and then the county commissioners may grant county aid unless such fair is organized by the board of county commissioners upon the vote of the people whereby the board buys the land and constructs the buildings and then has "full control and supervision over such county fair."

We notice that under any method of organization the fair is not free to the public and so of course the duty to the public would be greater.

It is true a fair association may be so organized as to become an arm of the government. See Berman v. Minnesota State Agri. Soc. 93 Minn. 125, 100 N. W. 732; Hern v. Iowa State Agri. Soc. 91 Iowa, 97, 24 L.R.A. 655, 58 N. W. 1092, but in these cases we find not only was the property owned by the state but those in control were made a department of the government authorized to enact ordinances, to legislate in regard to the control, with police force established, and authorized to make arrests. In such cases it was held the association was, "an agency of the state." As said in the Iowa case "it exists for the sole purpose of promoting the public interest in the business of agriculture."

If the legislature had constituted the directors of this fair a state board of agriculture or had made the board of managers an agency of the state giving it the duty of conducting a state fair it could then be argued that the board so far exercised a governmental function, rendering the institution immune from liability for injuries sustained as a result of the negligence of its officers or employees. See Morrison v. Fisher (Morrison v. MacLaren) 160 Wis. 621, L.R.A.1915E, 469, 152 N. W. 475. In this case cited here the board was organized as "a public corporation provided for by the statute for purely public purposes as an arm or agency of the state," and called the "Wisconsin State Board of Agriculture." This is not the situation in the case at issue.

As shown before, the Ward County Fair Association cannot be held to be a department of Ward county. Even though it may receive county aid and even though it could be said that under the statute involved the North West Fair Association was an agent of the state that does

not make it a public corporation. Corporations which are agents of the state "stand in no better position than officers of the general government, and as to them it has often been held that 'the exemption of the United States from judicial process does not protect their officers or agents . . . from being personally liable to an action of tort by a private person whose rights of property they have wrongfully invaded or injured, even by authority of the United States." See Hopkins v. Clemson Agri. College, 221 U. S. 636, 645, 55 L. ed. 890, 895, 35 L.R.A. (N.S.) 243, 31 Sup. Ct. Rep. 654. See also Belknap v. Schild, 161 U. S. 18, 40 L. ed. 601, 16 Sup. Ct. Rep. 443, and Thornton v. Maine State Agri. Soc. 97 Me. 108, 94 Am. St. Rep. 488, 53 Atl. 979, 13 Am. Neg. Rep. 302. In this case no question was raised as to liability in tort. This appears to be assumed and nothing is said as to the mode of organization but it was the State Agricultural Society who was defendant and conducting the state fair. See also Logan v. Agricultural Soc. 156 Mich. 537, 121 N. W. 485; Clark v. Monroe County Fair Asso. 203 Iowa, 1107, 212 N. W. 163. The fact that it claims to be a public service corporation does not render a fair association immune from suit for damages to one injured by negligence. See Com. v. Bacon, 13 Bush, 210, 26 Am. Rep. 189.

In Agricultural & Mechanical Asso. v. Gray, 118 Md. 600, 85 Atl. 291; Phillips v. Wisconsin State Agri. Soc. 60 Wis. 401, 19 N. W. 377; Selinas v. Vermont State Agri. Soc. 60 Vt. 249, 6 Am. St. Rep. 114, 15 Atl. 117; Smith v. Cumberland County Agri. Soc. 163 N. C. 346, 79 S. E. 632, Ann. Cas. 1915B, 544, and Oakland City Agri. & Industrial Soc. v. Bingham, 4 Ind. App. 545, 31 N. E. 383, the defendants were held liable in tort but the opinions do not state the nature of the laws under which the associations were organized, or incorporated.

The cases of Bathe v. Decatur County Agri. Soc. 73 Iowa, 11, 5 Am. St. Rep. 651, 34 N. W. 484; Williams v. Dean, 134 Iowa, 216, 11 L.R.A.(N.S.) 411, 111 N. W. 931, do not apply. In the former case the officers of the society had hired one C. and one W. to convey people in their own conveyances to the fair grounds. The action was brought because of an injury caused by the persons who were doing the conveying and a demurrer was sustained on the ground the officers had no authority to so employ C. and W. and so the defendant did not become responsible for the acts of the directors. The latter case was

an action brought against the directors personally but the court expressly declined to pass upon the liability of the association as "the fair association was not made a party" to the suit.

As shown in Lane v. Minnesota State Agri. Soc. 62 Minn. 175, 29 L.R.A. 708, 64 N. W. 384, "It does not appear that the state has any voice in the selection or control of its officers, or in fixing their compensation, or in the disposition of its properties and revenues, except such as it receives from the state, or as to the character or extent of the annual exhibitions it may give, or the fees to be charged for admission thereto. If the defendant refused to give an annual exhibition of the products or resources, . . . the state may withdraw its appropriations . . . but it cannot otherwise coerce the defendant."

This is not an action brought against the county nor against the state. The complaint shows it to be a suit brought against a private fair association, known as the Ward County Fair Association and receiving county aid, which association upon the changing of its name and placing of the title to its property in the state in trust receives an appropriation from the state but it is not controlled by the state nor is it under state direction. The order overruling the demurrer to the complaint is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.