[File No. 5838.]

W. H. HADLER, Respondent, v. NORTH WEST AGRICULTURAL, LIVE STOCK AND FAIR ASSOCIATION, a Public Corporation, Appellant.

(239 N. W. 736.)

Opinion filed May 22, 1931. Rehearing denied December 31, 1931.

*Halvor L. Halvorson* and *Robert H. Bosard,* for appellant.

*E. R. Sinkler, G. O. Brekke* and *George A. McGee (B. F. Spalding on rehearing)* for respondent.

650

NUESSLE, J. This is an appeal from a judgment of the District Court of Ward County, wherein the plaintiff recovered damages for injuries claimed to have been incurred through the negligence of the defendant, the North West Agricultural, Live Stock and Fair Association.

In September, 1926, the defendant, purporting to act under the provisions of chapter 217, Sess. Laws, 1923 (§§ 1866a1–1866a7, inclusive, 1925 Supplement), held a fair known as the North West Fair.

Among other features for the entertainment of its patrons it advertised and held an automobile race. The plaintiff paid admission to and attended the fair on the day this race was held. One of the racing automobiles left the track on a sharp curve and ran him down. Plaintiff was very seriously injured. He thereafter brought this action to recover on account of the injuries thus sustained by him, alleging that the accident occurred by reason of the negligence of the officers of the defendant in failing to provide a reasonably safe place for those who attended the fair. The case was tried to a jury. The plaintiff had a verdict. Defendant appeals from an order denying its motion for a new trial or for judgment notwithstanding the verdict and from the judgment entered on the verdict.

The defendant in support of this appeal has assigned a large number of errors. Many of these assignments are predicated on the proposition that the defendant is a public corporation and that in conducting the fair it was engaged in a public and governmental enterprise and undertaking and, on that account, regardless of any negligence of which its officers may have been guilty, no action therefor will lie against it in the absence of a statute permitting such action to be brought. Since if this position is sustained the judgment must be reversed, we will first examine the question of the defendant's responsibility in tort.

Chapter 102, Sess. Laws, 1919 (§§ 1874a1–1874a4, inclusive, 1925 Supplement), provides that the boards of county commissioners in the several counties of the state may, and when petitioned by five per cent of the voters in one-half the voting precincts in the county, must submit to the electors at a general election the question of purchasing or leasing land for county fair purposes; provides that if a majority of the legal voters shall vote in favor thereof it shall be the duty of the board of county commissioners to purchase or lease land in the name of the county for such purposes and to build and construct thereon such improvements as they shall deem necessary for the operation and management of a county fair; provides that the board of county commissioners shall have full control and supervision over such fair and the operation and management thereof, and requires the board to make rules, regulations and by-laws for its operation and management; provides for the financing of the enterprise through taxation; provides that all moneys received from all sources in connection with such fair

shall be deposited with the county treasurer to the credit of the county fair fund, and that all moneys paid out for premiums and other purposes shall be paid out of such fund in such manner as the county board may prescribe.

Acting under this statute the county commissioners of Ward county in 1920 submitted the question of the creation of a county fair to the electors of the county. The proposition carried. Pursuant to the mandate thus expressed the board of county commissioners purchased eighty acres of land adjacent to the city of Minot for fair purposes and designated twelve freeholders of Ward county to assist them in the management of the county fair to be held thereon. Whereafter the commissioners and the freeholders thus designated, acting jointly as the Ward County Fair board, organized and held an annual fair known as the Ward County Fair.

In 1923 the legislature enacted chapter 217, Sess. Laws, 1923. This statute is entitled: "An Act to Incorporate and Establish the North West Agricultural, Live Stock and Fair Association, and Making an Appropriation therefor." Section 1 thereof provides:

"For the purpose of promoting and improving the condition of agriculture, live stock breeding, horticulture, mechanical manufacturing and household arts, a North West Agricultural, Live Stock and Fair Association fair or exposition shall be held annually at or adjacent to the city of Minot in the state of North Dakota, subject to the conditions hereinafter named, and the location of the North West Agricultural, Live Stock and Fair Association, as herein provided, is hereby declared to be permanent."

The second section of the act provides that if the Ward County Fair Association by proper resolution duly passed by it and approved by the county commissioners shall accept the provisions of the act, then such Ward County Fair Association shall receive the appropriation made by the act on compliance with the conditions set forth therein "without forfeiting or otherwise affecting its rights to such county aid as may now or hereafter be provided;" that the Ward County Fair Association shall convey title to the land held by it to the state of North Dakota for the sole purpose of "exhibiting thereon, under the management of such Association, or its successors, annually, the agricultural, stock breeding, horticultural, mining, mechanical, industrial and other

products and resources of the state of North Dakota including proper exhibits of the arts, sciences and all other public displays pertinent to and dependent upon exhibitions and expositions of human art, industry and skill. The said Association may use such portion of its funds as may be necessary for the acquisition of title to the land so held or to be purchased by it for use as fair grounds, and the balance thereof shall be and constitute a fund towards the construction of buildings and other permanent improvements thereon."

Section 3 vests the custody and control of the premises upon which the fair is located, in the North West Agricultural, Live Stock and Fair Association and fixes the office of the association at Minot. Section 4 provides:

"When the State of North Dakota accepts the title to the land so acquired by said Association, which acceptance shall be made by the Governor and Attorney General, thereupon, and not before such time, shall the deed of conveyance of said property to the state be accepted and recorded. Should the state of North Dakota cease to appropriate the sum of at least $2,500.00 annually in connection with said fair, then the title of said premises shall revert to and become the property of the Association that transferred the same to the state; provided, further, that the state shall never become liable for any of the debts and liabilities of said Association save as appropriations shall be made therefor from time to time by the Legislative Assembly. The provisions of this article shall not become binding upon the state as to said fair association until such association shall adopt and file with the Secretary of State an irrepealable by-law consenting to the provisions hereof and providing that its board of directors shall consist of eleven persons; and that said Association shall appoint an advisory committee consisting of the Governor, Commissioner of Agriculture and Labor and State Auditor together with one resident freeholder from each judicial district of the state; which said committee is privileged to attend the meetings of the Association, and is at all times to be fully advised in regard thereto."

Section 5 provides:

"The board of directors of said Fair Association shall appoint an executive committee consisting of five members who shall keep an accurate account of the expenditures and all moneys appropriated

to it by the state, and all other receipts and expenditures, and shall collect, arrange and collate all the information available in relation to the nature and preparation of soils, the cultivation and growth of crops, the breeding and management of stock, the application and character of manure and fertilizer, the introduction of new cereals and other grains, and other agricultural subjects, and report the same together with a statement of their doings and such account of their expenditures to the Governor on or prior to the first day of January of each year following the holding of a fair; such report to be audited by the Governor, Commissioner of Agriculture and Labor and the State Auditor, and by the Governor laid before the Legislative Assembly. All moneys hereby appropriated shall be paid over to the treasurer of the Association upon the order of the president, attested by the secretary."

Section 6 makes an appropriation of $2,500.00 annually. Section 7 provides that the act shall not become binding or effective upon the state until the association shall adopt a by-law expressly accepting and agreeing to all of the conditions thereof and file a certified copy of said by-law with the secretary of state.

Thereafter and on July 16, 1923, the Ward County Fair Board accepted and agreed to the provisions of chapter 217, Session Laws of 1923, and resolved that all necessary steps be taken to conform to the requirements of this act. On the same date the board of county commissioners of Ward county approved and ratified this action of the Ward County Fair Association. The fair board also adopted by-laws appropriate under the statute. These by-laws provide that the management and control of the association shall be vested in a board of eleven directors, five of whom shall be the county commissioners of Ward county. All of said directors not members of the board of county commissioners shall be selected by the board of county commissioners. The county treasurer of Ward county is ex-officio treasurer of the fair board, and all moneys received by the board or by any of the officers appointed by the board shall be turned over to the treasurer of Ward county to be placed in the county fair fund as provided in chapter 102, Session Laws of 1919. All expenditures by the board or any of its officers for any purpose shall be made from the county fair fund by the county treasurer after having been first duly approved by the

commissioners of Ward county in the same manner that other bills against Ward county are approved and allowed.

Thereafter a certified copy of these by-laws was filed with the secretary of state and a deed to the fair grounds of the Ward County Fair was executed and delivered to the state of North Dakota. An advisory committee was appointed pursuant to the terms of the statute. The deed to the state was accepted and filed and thereafter the appropriations made by the act were paid to and received by the fair association and covered into the fair fund pursuant to the provisions of the by-laws made in that behalf. Fairs were held and reports thereof were made as required by § 5 of the act. The fair held in July, 1926, during which the accident occurred wherein the plaintiff was injured, was one of the fairs so held.

Counties are political subdivisions of the state. They are quasi corporations through which the state itself functions. See Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092; Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 464; 1 Dill. Mun. Corp. (5th ed.) §§ 35, et seq. Ordinarily such agencies of the state are not responsible on account of the misfeasance or nonfeasance of the officers through whom they must act. This is because they are performing governmental functions and the government is not liable to the individual unless made so by statutory or constitutional enactment. See State ex rel. Shafer v. Lowe, 54 N. D. 637, 210 N. W. 501; Wirtz v. Nestos, 51 N. D. 603, 200 N. W. 524. This immunity applies as well to townships (see Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092, supra), to school districts (see Anderson v. Board of Education, 49 N. D. 181, 190 N. W. 807), and to cities and other municipal corporations when they are functioning in a governmental capacity. Hanson v. Berry, 54 N. D. 487, 47 A.L.R. 816, 209 N. W. 1002; Moulton v. Fargo, 39 N. D. 502, L.R.A.1918D, 1108, 167 N. W. 717; Montain v. Fargo, 38 N. D. 432, L.R.A.1918C, 600, 166 N. W. 416, Ann. Cas. 1918D, 826. In this connection see, also, Lane v. Minnesota State Agri. Soc. 62 Minn. 175, 29 L.R.A. 708, 64 N. W. 382; Berman v. Minnesota State Agri. Soc. 93 Minn. 125, 100 N. W. 732; Dunn v. Brown County Agri. Soc. 46 Ohio St. 93, 1 L.R.A. 754, 15 Am. St. Rep. 556, 18 N. E. 496.

Fairs such as that conducted by the defendant are educational in character. Their purpose and object is wholly public—the advance-

ment and betterment of the state through the education of the people thereof by the dissemination of knowledge of the arts and sciences and their practical application in and to the industries and resources of the state. See Melvin v. State, 121 Cal. 16, 53 Pac. 416; Downing v. Indiana Bd. of Agriculture, 129 Ind. 443, 12 L.R.A. 664, 28 N. E. 123, 614; Berman v. Minnesota State Agri. Soc. 93 Minn. 125, 100 N. W. 732, supra.

The provisions of chapter 102, Sess. Laws, 1919, supra, are mandatory upon the counties where the question of the organization of a county fair is submitted to and carried by a vote of the electors. The vote being in the affirmative a county has no option but must proceed in accordance with the terms of the statute. That the matter of the inception of a county fair is thus left to be determined by the vote of the people of the several counties does not alter the character of the enterprise. As is said in Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092, supra: "It is the nature of the entity and not the method of its creation that must control." Nor does the fact that in operating the fair admission fees are charged patrons change the character of the enterprise. See Melvin v. State, 121 Cal. 16, 53 Pac. 416, supra; Zoeller v. State Bd. of Agriculture, 163 Ky. 446, 173 S. W. 1143; Downes v. Harper Hospital, 101 Mich. 555, 25 L.R.A. 602, 45 Am. St. Rep. 427, 60 N. W. 42; Robinson v. Washtenaw Circuit Judge, 228 Mich. 225, 199 N. W. 618. The county derives no profit from the fair. The funds to maintain it are secured through taxation and from admission charges. Whatever their source these funds are required to be covered into the county fair fund in the custody of the county treasurer. They can be used only for the payment of premiums and otherwise to advance the interests of the fair and in the procurement, improvement, and maintenance of grounds and appurtenances where the fair may be held. They can be used for no private purpose. The grounds and appurtenances are required to be used for fair purposes and for no other purpose. The legislature determined this use. The county commissioners have no discretion in the matter. They have discretion only with respect to the management and operation of the fair. Whether the fair created in Ward county under chapter 102, Sess. Laws, 1919 was conducted under the name of the Ward County Fair or the Ward County Fair Association, is wholly immaterial. In fact it was con-

ducted by the county, an agency of the state. The statute defined and fixed its character, and that, as we have seen, was public and governmental. So in the absence of express permission there could have been no liability as against the so-called Ward County Fair Association or the county of Ward or the state on account of the nonfeasance of those charged with the duty of carrying it on. See also in this connection Morrison v. Fisher (Morrison v. MacLaren) 160 Wis. 621, 152 N. W. 475, L.R.A.1915E, 469, and cases cited in note; Robinson v. Washtenaw Circuit Judge, 228 Mich. 225, 199 N. W. 618, supra; Berman v. Minnesota State Agri. Soc. 93 Minn. 125, 100 N. W. 732, supra.

The next question that presents itself is as to whether the 1923 statute above referred to had the effect of so perverting the public and governmental character of the original Ward County Fair as to deprive it of its immunity from actions for tort. In Hadler v. North West Agri. Live Stock & Fair Asso. 57 N. D. 872, 224 N. W. 193, the instant case was before us on demurrer to the complaint. We there held the complaint good on the assumption that the Ward County Fair Association was a corporation organized under the provisions of § 1867, Comp. Laws 1913, providing for the organization of private corporations for the holding of county fairs. We held that where such private corporations complied with the requirements of § 217, Sess. Laws, 1923, their nature was not thereby so changed as to render them public corporations, exercising governmental functions. We said that the second section of the act shows "that this association is merely the Ward County Association under a different name." By the same token it would follow that if the original association was public and governmental, the present association operating under the provisions of the act of 1923 is also public and governmental. However, the case is by no means without difficulty. It lies in that twilight zone where it is difficult to discern the boundary line between public and governmental function and private or proprietary enterprise. But viewed in the light of the facts as here disclosed, it seems to us that the North West Fair, so-called, was public and governmental.

The original Ward County Fair was a county institution. It took life at the command of the legislature. Its purpose was public and educational. The county was required to establish it. No profit was

derived from carrying it on. The use of such property as was acquired for fair purposes was determined by the legislature—fixed and controlled by law. The legislature had the power at any time it saw fit to abandon and discontinue it. Whatever property it had belonged to the county. No private individual received any special benefit from it as distinguished from the benefit which every individual as a part of the public received. When under the provisions of chapter 217, Sess. Laws, 1923, it changed its name and form so as to receive state aid, there was no practical change in any of the respects above mentioned; neither as to ownership, control, operation, purpose, or with respect to the financial ends attained by it. The legislature could abandon and discontinue it at any time it saw fit. While in operation its property stood in the name of the State. If discontinued its property was the property of Ward County. The directors were creatures of the legislative will and held office only at its pleasure. They were vested with no discretion as to the use to which the property should be put. They had discretion only with respect to the manner in which that use might be effectuated. In the legislative contemplation the fair was not a purely local institution. This is apparent from the provisions of the statute which require that the association appoint an advisory committee, consisting of the governor, commissioner of agriculture and labor, and the state auditor, together with one freeholder from each judicial district of the state; and further require that the association shall collect, arrange and collate all the information available in relation to the nature and preparation of soils, the cultivation and growth of crops, the breeding and management of stock, the application and character of manure and fertilizer, the introduction of new cereals and other grains, and other agricultural subjects, and report the same together with a statement of their doings and such account of their expenditures to the governor; such report to be audited by the governor, commissioner of agriculture and labor and the state auditor, and by the governor laid before the legislative assembly.

The plaintiff contends, and so alleges in his complaint, that the North West Fair Association was a public corporation. The title to the act, quoted supra, indicates that such was the legislative intent. The body of the act contains no provision with respect to the matter

of incorporation other than by inference, when it provides for a board of directors and implies that there shall be a president, treasurer and secretary. Conceding, however, that compliance with the terms of the act results in the formation of a public corporation, nevertheless that fact in itself furnishes ground for the contention that such corporation is but an agency of the state. For the statute is clearly a special act. It can apply to no fair association in the state of North Dakota other than the Ward County Fair Association existing at the time of its passage. So it must be presumed that the legislature contemplated that by subscribing to the conditions of the act and operating under it the fair association would be under the control of the state. Otherwise the inhibition as contained in § 131 of the constitution would be violated. This section provides:

"No charter of incorporation shall be granted, changed or amended by special law, except in the case of such municipal, charitable, educational, penal or reformatory corporations as may be under the control of the state; but the legislative assembly shall provide by general laws for the organization of all corporations hereafter to be created, and any such law, so passed, shall be subject to future repeal or alteration."

Nor is this the only evidence of the legislative conception that the fair operating under the act would be public and governmental. The act appropriates public moneys for the support and maintenance of the association, provided it conforms to the requirements laid down. So the legislature must have considered the purpose and object public and governmental. Any other conclusion can only contemplate a violation of § 185, constitution of North Dakota, providing:

". . . But neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation."

See State ex rel. Goodwin v. Nelson County, 1 N. D. 88, 8 L.R.A. 283, 26 Am. St. Rep. 609, 45 N. W. 33.

We conclude then that the defendant, the North West Agricultural,

Live Stock and Fair Association, is an agency of the state, functioning in a governmental capacity, and therefore is not liable for tort.

Judgment reversed and action dismissed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.

NUESSLE, J. (On rehearing.) On petition of the respondent a rehearing was ordered in this case. Additional briefs were filed and the case was ably and exhaustively reargued.

We have carefully considered the additional points advanced, and have re-examined the authorities cited in the original briefs as well as those newly called to our attention. However nothing advanced on the rehearing has changed our opinion respecting any of the propositions involved and accordingly we adhere to the opinion heretofore filed.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE and BURR, JJ., concur.